Commonwealth *v.* Singleton, Appellant.

186

Argued January 20, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Joseph R. Danella,* with him *Louis Lipschitz,* for appellant.

*James D. Crawford,* Deputy District Attorney, with him *Brian E. Appel* and *Benjamin H. Levintow,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, July 2, 1970:

Shortly before midnight on April 16, 1966, Ronald Singleton approached a police officer on the street and reported that his mother, sister and grandmother had

been beaten in their nearby home. It was soon discovered that the three women were dead, and an intensive investigation was launched. The sixteen-year-old Singleton rapidly became the prime suspect as he began to give increasingly conflicting stories concerning his knowledge of the crime. At approximately 1:30 a.m., he was taken to divisional police headquarters for continued interrogation, and some time around 4:00 a.m., he gave an oral incriminating statement. He was then taken to the Police Administration Building, where a written statement was prepared and signed between 7:15 a.m. and 10:10 a.m.[1]

At Singleton's jury trial the Commonwealth's case consisted primarily of the incriminating statements obtained from him shortly after the slayings. He was convicted on three counts of murder in the first degree and received sentences of life imprisonment.

The issue on this appeal is whether or not Singleton was fully apprised of and knowingly waived his constitutional rights. The Commonwealth argues the affirmative, relying primarily on the fact that the detective who conducted much of the questioning testified that he informed Singleton of his constitutional privileges some time around 2:30 a.m. on the morning of April 17, 1966, and that Singleton declined to take advantage of those constitutional prerogatives. Singleton, on the other hand, argues that he did not knowingly and intelligently waive his constitutional rights, basing his assertion on alleged deficiencies in the substance of the warnings given and on the nature of the circumstances under which they were given. We agree with one of Singleton's contentions, and therefore reverse the judgment of sentence and grant a new trial.

---

[1] Between the time Singleton first reported the incident and the time he gave the written statement, he had contact with only one non-policeman, his foster father, whom he saw around 7 a.m. at the Police Administration Building.

## I. Specific Deficiencies in the Required Constitutional Warnings.

The standards applicable in this case are those set forth in *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602 (1966)[2]:

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned *prior to any questioning* that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to *the presence* of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. . . . *After* such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." 384 U. S. at 478-79, 86 S. Ct. at 1630. (Emphasis added)

"If . . . interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privi-

---

[2] *Johnson v. New Jersey,* 384 U. S. 719, 86 S. Ct. 1772 (1966), makes the *Miranda* standards applicable to any case in which the trial was held after June 13, 1966, the date of the *Miranda* decision. The trial in this case was held on February 20, 1967.

lege against self-incrimination and his right to retained or appointed counsel. Escobedo v. Illinois, 378 U. S. 478, 490, n.14, 84 S. Ct. 1758, 1764, 12 L. Ed. 2d 977. This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v. Zerbst, 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), and we reassert these standards as applied to in-custody interrogation." 384 U. S. at 475, 86 S. Ct. at 1628.

Under this standard, the warnings given Singleton prior to his oral statement were deficient because he was told that any statement he gave could be used "for or against him" at trial.

Now it is true that in *Miranda* the Supreme Court did not put an imprimatur on any one version of the warnings referring to the use of a suspect's statement. At one point the Court said that the suspect should be warned that his statement "may" be used against him. 384 U. S. at 444, 86 S. Ct. at 1612. At another point, following the discussion of the reasons for the decision, the Court stated that a suspect is entitled to a "warning of the right to remain silent . . . accompanied by the explanation that anything said can and will be used against the individual in court." 384 U.S. at 469, 86 S. Ct. at 1625. And in yet another place the Court declared that the suspect should be told that any statement "can be used in evidence against him". 384 U. S. at 471, 86 S. Ct. at 1626. Furthermore, the Court cited with approval the warnings given under the F.B.I. procedures, 384 U. S. at 483, 86 S. Ct. at 1632, the warnings mandated by the English Judges' Rule, 384 U.S. at 486-88, 86 S. Ct. at 1634-35, and the warnings required by the Uniform Code of Military Justice, 384 U. S. at 489, 86 S. Ct. at 1635. All of these warnings state that a suspect must be informed that a statement "may" be used against him in subsequent proceedings.

Even though the Court failed to set forth a single permissible formulation of this warning, however, they did clearly indicate that deviation from the prescribed formulation of the various warnings would be permissible only when the offered version is *more* likely to give a suspect a *better* understanding of his constitutional rights and a *heightened awareness* of the seriousness of his situation. We feel that a warning which includes the word "for" is outside the parameters of permissible variation. *None* of the alternative formulations contained in the opinion of the Court or in the cited sources contains the word "for", the inclusion of which acts as a subtle inducement to speak, helps neutralize the suspect's awareness of the hostile environment, and vitiates the intended impact of the warning.[3]

---

[3] The American Law Institute's Model Code of Pre-Arraignment Procedure, Ten. Draft No. 1, 1966, stated that a suspect should be warned ". . . that he is not obliged to say anything and that anything he says may be used in evidence; . . ." At the 1968 meeting of the American Law Institute, Professor Yale Kamisar of the University of Michigan Law School criticized the phrasing of this warning, saying:

"It seems to me that whatever empirical data we have shows that, if anything, the message [of the warning] is not getting through, and that in light of the passage I just read [from *Miranda*], it seems to me that this language takes the edge a little bit off, and is likely to make the suspect *less aware* than I think the Supreme Court was trying to have him aware that he is in an adversary system, and the consequences of talking are quite serious, and I see no adequate reason for changing 'anything he says may be used against him' to 'anything he says may be used in evidence', or, as many prosecutors are suggesting, 'may be used in evidence *for* or *against* him.' " Proceedings at 442.

The reporter of the Model Code, Professor Vorenberg of Harvard, answered Professor Kamisar as follows:

"Well, I think I agree with what you say about the proposal to say 'anything he may say may be used in evidence against him'. I think that to say 'may be used *for* or against him' opens up the possibility that the prosecution will, by some intonation, give the impression that it's more likely to be used *for* rather than *against* him. . . ." Proceedings at 442-443.

In stating its reasons for requiring the warning about the future use of any statements, the Court said: "[t]his warning is needed in order to make . . . [the suspect] aware not only of the privilege, but also the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his interest." 384 U. S. at 469, 86 S. Ct. at 1625. Since the deviation here involved is hardly likely to give suspects a heightened understanding of their constitutional rights, and is in fact likely to undercut the effect of the warning by offering an inducement to speak, we find it impermissible.

The judgment of sentence is reversed and a new trial granted.

Mr. Justice JONES dissents.

CONCURRING AND DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I believe, considering the age of the boy and the very extensive interrogations by the police at police headquarters before he was given the *Miranda* warnings, that his confessions, both oral and written, were inadmissible. However, I further believe that the majority has gone beyond even *Miranda v. Arizona,* 384

As a result of this discussion the suggested warning was rewritten, and the Tent. Draft No. 2, 1969, of the Code recommends that a suspect be warned "that [he] is not obliged to say anything, and anything he says may be used in evidence *against* him." (Emphasis throughout added.)

See also Lynch, Added Burdens for Law Enforcement Officials, in A New Look at Confessions: Escobedo—The Second Round (George, ed. 1967).

U. S. 436, and any extension of that case would be unjustified and would be exceptionally unfair to the law-abiding public.

The majority Opinion in *Miranda* said, as we all remember, that the suspect should be warned that his statement *"may"* be used against him, 384 U. S. at page 444. At two other places in the Opinion, the Court said that any statement *"can* be used in evidence against him." The word "may" has been cited with approval regarding warnings given under the F.B.I. procedures, 384 U. S. at 483, 86 S. Ct. at 1632, the warnings mandated by the English Judges' Rule, 384 U. S. at 486-88, 86 S. Ct. at 1634-35, and the warnings required by the Uniform Code of Military Justice, 384 U. S. at 489, 86 S. Ct. at 1635. All of these warnings state that a suspect must be informed that a statement "may" be used against him in subsequent proceedings.

The warnings that any statement the accused gave could be used "for or against him" at his trial is, if anything, more favorable to the defendant than to the Commonwealth and more likely to induce him to make a favorable statement instead of a coerced or inculpatory statement.

For all these reasons, I concur in the grant of a new trial but strongly disagree with the majority Opinion in the above mentioned respects.