Nat Villiam **WRIGHT**, Appellant,

v.

**STATE OF NORTH CAROLINA** and
David Henry, Warden, State's Prison,
Appellees.

No. 72–1475.

United States Court of Appeals,
Fourth Circuit.

Argued April 2, 1973.

Decided Aug. 2, 1973.

Robert Lalley and John Greenhaugh, Third Year Students (Daniel H. Pollitt, Chapel Hill, N. C. [court-appointed counsel], on brief), for appellant.

Jacob L. Safron, Asst. Atty. Gen. of N. C. (Robert Morgan, Atty. Gen., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, RUSSELL, Circuit Judge, and BLAIR, District Judge.

DONALD RUSSELL, Circuit Judge:

In this *habeas* proceeding, a North Carolina prisoner, convicted of rape,[1]

---

1. There were three trials of the petitioner. The first trial, which resulted in a conviction, was reversed on appeal. State v. Wright (1968), 274 N.C. 84, 161 S.E. 2d 581. The second ended in a mistrial. Tried a third time, the petitioner was convicted, and his conviction was affirmed on appeal. State v. Wright (1969), 275 N.C. 242, 166 S.E.2d 681. It is this conviction that the petitioner challenges, though the basis of his claim arose and was disposed of in all three trials.

challenges the constitutional admissibility of an inculpatory statement secured from him shortly after his arrest. There is no dispute that the petitioner was given a warning—in fact, two warnings—before his statement was taken. It is the petitioner's contention that the warning as given was inadequate in form itself to advise him adequately of his rights as mandated by *Miranda*;[2] he goes further and urges that, even if the warning were technically sufficient in form to satisfy *Miranda*, his incriminating statement, considering the "totality" of the surrounding circumstances, was involuntary and its admission in evidence constitutionally proscribed. When the state court dismissed his application for post-conviction relief on these grounds, he had thereby exhausted his state remedies and action was thereupon begun in the district court, which, also, dismissed his petition, holding "that the findings of the state court are fully substantiated by the record, and that the law has been correctly applied." Petitioner has appealed that dismissal. We affirm.

 According to the police authorities, the warning given the petitioner was either read by or read to him from a printed form used at the time by the local police authorities.[3] Actually, the warning was given, not once but on two occasions, first when he was arrested early in the morning and some hours later just before he was interrogated.[4]

The petitioner asserts that the warning, which was to the effect that if the person in custody wished a lawyer, one would be appointed for him "if and when you go to court", was an inadequate statement of the rights of one in custody as set forth in *Miranda*, which demands specific advice that one has a right to the presence of counsel not at some later time, but then and there; it is, as one court has phrased it, a right "to instant counsel". He argues that, because of the inadequacy of the warning, his waiver of his constitutional right to remain silent and to be given counsel at his interrogation was invalid as a matter of law.[5]

The form of warning used in this case has come under judicial review in a number of decisions. While there is some contrariety of views on its adequacy in these decisions, we find the reasoning in United States v. Lacy (5th Cir. 1971), 446 F.2d 511, upholding the validity of the warning as given, persuasive. There the Court said (at 513):

> "We think this warning comports with the requirements of *Miranda*. Lacy was informed that he had the right to the presence of an appointed attorney before any questioning. The agents did say that the appointment of an attorney would have to be made by the court at a later date. But they also made perfectly clear that Lacy had a right not to answer questions

2. Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The full warning given is set forth in the Appendix hereto.

3. That the warning was on a printed card, which was read to or by the defendant, does not render it defective under *Miranda, see* United States v. Bailey (5th Cir. 1972), 468 F.2d 652, 660.

4. On the necessity of successive warnings, *see* United States v. Hopkins (5th Cir. 1970), 433 F.2d 1041, 1045, cert. denied, 401 U.S. 1013, 91 S.Ct. 1252, 28 L.Ed.2d 550.

5. Recently, one court has pointed out that the *Miranda* rule "was promulgated upon the explicit premise that it could be validly waived" and when the police author-

ities have "faithfully followed the exact procedure prescribed by the Supreme Court", courts should be slow to find their action ineffectual. United States v. Frazier (D.C. Cir. 1973), 476 F.2d 891, 899.

See, also, *Miranda, supra*, where the Court said:

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver." (384 U.S., at 475, 86 S.Ct., at 1628.) Again, at 478, 86 S.Ct. at 1630, the same authority states that any statement "given freely and voluntarily without any compelling influences is, of course, admissible in evidence * * *."

until that time should come. Thus we think the twin requirements of Lathers v. United States, 5 Cir. 1968, 396 F.2d 524 were met: the defendant was informed that (a) he had the right to the presence of an attorney and (b) that the right was to have an attorney 'before he uttered a syllable'. That the attorney was not to be appointed until later seems immaterial since Lacy was informed that he had the right to put off answering any questions until the time when he did have an appointed attorney."

A like conclusion was earlier expressed by the same Court in Mayzak v. United States (5th Cir. 1968), 402 F.2d 152. There, the warning was substantially the same as that given here. The defendant was advised of his right to counsel but was told that he could not be furnished counsel "until federal charges had been brought against him." As here, the defendant contended such warning did not meet the strict standards of *Miranda*. In overruling the contention, the Court said (at 155):

"Stripped of its cry of pain, defendant's contention is simply that he was entitled to be warned not only of his right to counsel, but of his right to instant counsel. *Miranda*, however, does not require that attorneys be producible on call, or that a Miranda warning include a time table for an attorney's arrival. Nor does it seem to us requisite that the officer conducting the interview declare his personal and immediate power to summon an attorney. The adequacy of the warning is not jeopardized by the absence of such embellishments."

The Second Circuit in Massimo v. United States (2d Cir. 1972), 463 F.2d 1171, 1174, cert. denied, 409 U.S. 1117, 93 S.Ct. 920, 34 L.Ed.2d 700, where a warning similar to that in this case was at issue, adopted the view stated in *Lacy* on the adequacy of the warning. Spe-

cifically, it rejected the conclusions on the point as reached in United States v. Cassell (7th Cir. 1971), 452 F.2d 533 and in United States v. Garcia (9th Cir. 1970), 431 F.2d 134, two of the authorities relied on heavily by the petitioner. We choose to follow the reasoning applied in *Lacy* and *Massimo* and to sustain the sufficiency of the warning.

Petitioner urges, as an alternative position, that, whether the warning given be deemed sufficient in form to satisfy *Miranda*, his incriminating statement, considered in the light of the "totality of the surrounding circumstances," was involuntary and, therefore, inadmissible. In considering this contention, we are confronted at the outset with the fact that this contention has been previously considered and ruled on by the state court, not once but three times in the trial court, twice by the Supreme Court of North Carolina, and finally in the post-conviction proceedings; and each time, the conclusion reached has been adverse to the position advanced by the petitioner. On all three occasions in the trial court, the state court conducted a full and complete *voir dire* hearing on the issue, without the presence of the jury, and then submitted the issue to the jury for determination. Evidence in favor of and against the admissibility of the statement was taken. Specifically, the petitioner and his witnesses were heard; and full cross-examination of the prosecution's witnesses was had. At these hearings, it seems conceded all the relevant facts were fully, even exhaustively, developed, so much so that on this appeal the petitioner himself relies on the record made in the state court hearings as an accurate and complete presentation of all relevant circumstances. Moreover, the state court, both at the trial and the appellate level, in ruling on the voluntariness of the statement, followed the established standards as they have recently been stated in *Schneckloth*.[6] It recognized the principle of

6. In Schneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, the Court emphasized that the term

"knowing" was not to be "taken literally". (At 224, 93 S.Ct. at 2046). It rephrased the definition of voluntariness

"totality of circumstances" as the basic guideline. It restated "the factors taken into account" in determining voluntariness much as the Supreme Court had done in *Schneckloth* (*see* at 226, 93 S.Ct. at 2047; 161 S.E.2d at 586–587). And, having "carefully considered" all the relevant factors, the state court made full and complete findings of fact. In such findings it concluded that the incriminating statement in question had been "voluntarily, knowingly and intelligently made". It is this finding of the state court, made on these several occasions, after the development of a full and fair record and in the application of the proper legal standards, that petitioner would have us reverse.[7] It should be remembered, too, that, on three of the occasions that the state court had ruled on the voluntariness of the challenged statement, that court had an advantage that we do not have, i. e., it had the opportunity to observe the actual demeanor of the various witnesses as they testified. That such advantage is important was well emphasized by Justice Jackson in his dissent in Ashcraft v. Tennessee (1944), 322 U.S. 143, 171, 64 S.Ct. 921, 934, 88 L.Ed. 1192, to the effect that "a few minutes' observation of the parties in the courtroom is more informing than reams of cold record." Moreover, the state appellate court had, in its rulings in this case, demonstrated its sensitivity to claims of constitutional violations on the part of the prosecution by reversing the petitioner's first conviction because of the admission in evidence of an impermissibly suggestive identification. (161 S.E.2d at 590.)

■■■ In *habeas* proceedings involving a state prisoner, a federal court must independently apply the constitutional standards to the historical facts on which the petitioner predicates his claim, regardless of how fairly and completely the claim has been litigated in the state courts.[8] But when the state court has applied the proper constitutional standards and the issue concerns only the historical facts as found and declared by the state court, which is the situation here, Section 2254(d), 28 U.S. C., consistently with the rulings in Townsend v. Sain (1963), 372 U.S. 293, 316, 83 S.Ct. 745, 9 L.Ed.2d 770, provides that, in the absence of any of the circumstances specifically enunciated therein, the findings of the state court are presumed to be correct and the petitioner has the burden of establishing by convincing evidence that the evidentiary record in the state court does not "fairly support" the findings made by the state court.[9] The only ground on which the petitioner would attack the findings of the state court is that such findings are not "fairly supported" in the record. The statutory standard of "fairly supported" has been held to be the same as the "'clearly erroneous' standard employed in federal appellate review of trial findings on constitutional facts." Leavitt v. Howard, *supra* (462 F.2d at 996); Note, Developments in the Law —Federal Habeas Corpus, 83 Harv.L.Rev. 1038, at 1133–4 (1970). The issue thus becomes whether the finding by the state court that the petitioner's statement was "voluntarily, knowingly and intelligently made" was fairly supported by the record as determined by the "clearly erroneous" standard. The district court went beyond the "clearly erroneous" standard and found that the state

by expressing it in terms of the question. "(I)s the confession the product of an essentially free and unconstrained choice by its maker?" (At 225, 93 S.Ct. at 2047).

7. *See*, Hyde v. Warden (4th Cir. 1970), 435 F.2d 710.

8. Dodge v. Johnson (6th Cir. 1973), 471 F.2d 1249, 1250.

9. LaValle v. Delle Rose (1973), 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637, 1973;

Leavitt v. Howard (1st Cir. 1972), 462 F.2d 992, 995, cert. denied, 409 U.S. 884, 93 S.Ct. 175, 34 L.Ed.2d 140; United States ex rel. Johnson v. Johnson (3d Cir. 1973), 471 F.2d 264, 266; Dempsey v. Wainwright (5th Cir. 1973), 471 F.2d 604, 606; Thomas v. Craven (9th Cir. 1973), 473 F.2d 1235, 1236; Farmer v. Caldwell (5th Cir. 1973), 476 F.2d 22, 24; Miller v. Anderson (D.C.Okl.1972), 352 F.Supp. 1263, 1265.

court's finding of voluntariness was "fully substantiated by the record." We find no clear error in such conclusion.

The petitioner cites a number of circumstances which he urges support the conclusion that there was not fair support in the record for the finding of the state court that his statement was "knowingly" made.[10] In his brief he emphasizes that he had never before been involved in any police interrogation, was of low mentality, was subject to stomach cramps and headaches, and was easily persuaded. He particularly relied on his I.Q. score, obtained when, by direction of the state court, he was given an extensive mental examination. Concededly all of these facts should have been assessed in making a finding on the voluntariness of petitioner's statement and the record in the state court indicates that they were so considered. But the trier of the facts must evaluate them in the light of the other evidence in the record. And there was substantial evidence to the contrary in the record. Thus, the medical examiner, who gave the petitioner his I.Q. test, and whose report was offered in evidence by the petitioner at the *voir dire* hearings, stated that the score was not "too significant". Especially would this be true where, as here, there is an absence of any proof of actual coercion or any intensive interrogation. As the Court said in Procunier v. Atchley (1971), 400 U.S. 446, 453–454, 91 S.Ct. 485, 489, 27 L.Ed.2d 524, reh. denied, 401 U.S. 966, 91 S.Ct. 966, 28 L.Ed.2d 249, low mentality of the petitioner, while always a factor to be considered in the "totality of the circumstances", is relevant "only in establishing a setting in which actual coercion might have been exerted to overcome the will of the suspect". Moreover, the medical examiner, in stating his findings, which were based on "continued observations and frequent examination" of the petitioner, described the petitioner as "alert, readily understood the questioning" and he observed that the petitioner "talked intelligently", that his "(C)ontent of thought was without abnormality", that his memory was "average" and that he was "aware of the nature and probable consequences of the offense with which he stands charged." And while the petitioner had testified at trial he could neither read nor write and had finished only the fourth grade in school at age thirteen—in fact, he went further and denied that he had signed any waiver form or made any statement at all to the officers—his statement to the medical examiner was quite different. He told the examiner that he had "finished ninth grade at age 15, which is normal and did not repeat any grades." He added that "he liked school but had to stop to go to work". At the time of the alleged crime, the undisputed record showed that he was an adult, married, the father of two children, gainfully employed and the support of his family. The suggestion that he was easily persuaded, as testified to by his wife and pastor, had to be weighed against the finding of the medical examiner that he was "alert, readily understood the questioning" as well as the fact that, when requested to waive in writing the presence of counsel at the proposed identification lineup, he refused. And this refusal to waive in writing, occurring while he was in custody, indicated that he was not so awed by police custody that he was either unaware of his rights or willing to yield to any requests of the officers. As a matter of fact, it is of significance in this connection that he did not fully confess, but, while admitting he secured entrance into the complainant's bedroom by removing the window screen and climbing in, steadfastly contended he merely touched the complainant as she was sleeping in her bed: he denied emphatically that he had raped her. Though the facts on voluntariness were thus in dispute, this review of the record is adequate to establish that the finding that the petition-

10. United States ex rel. Tobe v. Bensinger (D.C.Ill.1972), 352 F.Supp. 218, 219; Mock v. Rose (D.C.Tenn.1971), 352 F. Supp. 554, 555.

er's statement was "voluntarily, knowingly and intelligently made", as determined by the state court, was "fully supported" by the record and the district court's finding to this effect was not "clearly erroneous."

Affirmed.

## APPENDIX

"Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you if you wish, if and when you go to Court. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to a lawyer."