372 A.2d 11

**COMMONWEALTH of Pennsylvania**

v.

**Robert JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Submitted June 14, 1976.

Decided March 31, 1977.

the testimony of the second victim in order to establish that appellee raped the prosecutrix.

210

Harris S. Pasline, Assistant Public Defender, Bethlehem, for appellant.

Robert A. Freedberg, Assistant District Attorney, Easton, and Charles H. Spaziani, District Attorney, Easton, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

Appellant has been found guilty by a jury of robbery, criminal conspiracy, recklessly endangering another person and carrying a prohibited, offensive weapon and has been sentenced to a prison term of not less than 7½ and not more than 15 years. His appeal from the sentence challenges (1) the refusal of the trial court to suppress evidence, (2) the effectiveness of assistance rendered by trial counsel, and (3) the length of his sentence.

The background of the suppression issue lies in the circumstances of appellant's warrantless apprehension and his verbal admissions of guilt made before counsel was assigned to him.

Jay's Submarine Shop in Easton was robbed of about $350 in late evening by two black men armed with a sawed off shotgun. Two employees described the robbers to the police and stated that one wore a green Army jacket and the other a black leather jacket. Shortly before the robbery a green Chevrolet had been observed by the police cruising near the scene of the robbery. Within minutes of the robbers' getaway, this car was observed about two blocks from the scene of the crime traveling at a high rate of speed. A pursuing officer located the car near the Easton Central Fire Station about five blocks from the scene of the robbery. It had just been parked there by the occupants and its engine was still warm. A fireman from the adjacent fire station informed the police that three black males had just rushed into an adjacent apartment building.

Two of the officers were directed to observe activities inside the apartment and did so by stationing themselves on the steps of a patio attached to the rear of the apartment for the use of anyone entering the building from the rear. Access to this patio was by a walkway at the rear of the apartment, but not adjacent to a public street.

From a position on the fourth or fifth step of the patio, the officers observed two black males and a white female through a four or five inch gap in the curtains on the

kitchen window. They observed one of the black males remove a green Army field jacket and another one stripping down to a T-shirt. After about fifteen minutes of observation, the officers called an Assistant District Attorney by telephone and were advised that they had probable cause to enter the apartment. Appellant and a co-defendant were arrested in the apartment and the police seized several items of physical evidence, including a black coat, a green Army jacket and some packages of coins found in one of the jackets.

Appellant and his co-defendant were taken to police headquarters where they were read a statement of the *Miranda* rights and then given a written copy of that statement to read. Appellant signed an acknowledgement that he had read the statement, understood his rights and did not want a lawyer. Later in the same night at the police station, appellant orally admitted to one of the officers, "Well, I guess you got me" and made some other remarks implicating himself and others. However, he refused to make a written statement without the presence of an attorney.

At appellant's preliminary hearing held a few days later, he was not represented by counsel but the proceedings were postponed for three days until counsel for appellant could be appointed and was present.

It was argued at the subsequent suppression hearing and is reiterated here that the testimony of the officers concerning what they saw from the patio steps should be suppressed because it constituted a search and seizure in violation of the rights of privacy of those within the apartment. However, the failure of appellant and those with him in the apartment to close the window shades negates appellant's argument that he was deprived of his privacy; and the fact that the observations of the police involved a trespass of private property is merely one factor to consider in determining the reasonableness of the visual intrusion: *Commonwealth v. Soychak,* 221 Pa.Super. 458, 462, 289 A.2d 119 (1972). See also *Commonwealth v. Janek,* 242 Pa.Super. 340, 363 A.2d 1299 (1976).

■ If the observations of the officers were legal, and the opinion of the suppression judge clearly demonstrates that they were, there was justification for a search of the apartment without a warrant and a seizure of the identifying jackets.

It is further argued that appellant's oral admission of guilt to a police officer should have been suppressed because the *Miranda* warning was ambiguous and, therefore, defective. The statement which was both read to appellant and given to him to read and on the basis of which he signed a waiver of his rights read as follows:

"Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to a lawyer."

"WAIVER: I have read the statement of my rights shown above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer. I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me."

A *Miranda* statement in this form was sustained as sufficient in *Wright v. North Carolina,* 483 F.2d 405, 406–7 (4th Cir. 1973), certiorari denied 415 U.S. 936, 94 S.Ct. 1452, 39 L.Ed.2d 494 (1974). A similar position has been taken by the 2nd and 5th Circuits, but a contrary conclusion was reached in the 7th and 9th Circuits, all reviewed in *Wright.* In our view, the statement read to appellant was adequate.

214

■ In any event, it was not misunderstood by appellant. While the statement is capable of the construction that appellant would not be assigned a lawyer until his trial began, it is demonstrable that appellant knew he had a right to counsel before making any statement to the police. We know this because upon his first confrontation with the police following the *Miranda* statement he refused to put his verbal comments into written form without the presence of a lawyer. The record also shows that he was represented by counsel at his preliminary hearing and, of course, at the trial. The ruling of the trial court that his verbal statements to the police might be admitted in evidence was correct, the Commonwealth having proved that appellant received his *Miranda* warnings, and there being no showing that he misunderstood the warnings given to him.

Appellant contends that his trial counsel was ineffective in the following respects: (1) that he failed to address himself properly to all the issues raised on the pre-trial motions, (2) that he did not demur to the evidence at the conclusion of the Commonwealth case, (3) that he did not raise appropriate and reasonable objections to the introduction of certain evidence, (4) that he did not submit proper points for jury instructions, (5) that he did not effectuate post-verdict motions, and (6) that he did not preserve all the issues that appellant wished to be raised on appeal.

■ While we have before us the transcript of the suppression hearing, the trial notes have not been transcribed and submitted to us. Consequently, the record before us is inadequate to enable us to determine whether appellant's trial counsel was ineffective and we must, therefore, remand this case for an evidentiary hearing on that issue: *Commonwealth v. Dancer,* 460 Pa. 95, 100, 331 A.2d 435 (1975); *Commonwealth v. Twiggs,* 460 Pa. 105, 111, 331 A.2d 440 (1975); *Commonwealth v. Strachan,* 460 Pa. 407, 410, 333 A.2d 790 (1975).

■ The sentence of 7½ to 15 years is challenged on the ground that the Northampton County Court was making a

concerted effort to give stiffer sentences in crimes of violence such as armed robbery. Granted that the court en banc was so concerned, there is nothing indicating an abuse of discretion in a sentence of 7½ to 15 years. The sentence could have been up to 20 years on the robbery count alone and is well within the statutory limits and the discretion of the court.

This case is remanded for an evidentiary hearing on the issue of the effectiveness of counsel. If after hearing, the court below finds that counsel was ineffective, it should vacate the sentence and grant a new trial. If it finds that counsel was not ineffective, the sentence should be affirmed.

SPAETH, J., files a dissenting opinion, in which HOFF-MAN, J., joins.

SPAETH, Judge, dissenting:

I cannot agree that appellant was given adequate *Miranda* warnings.

1

Appellant complains of the underlined language in the following warnings, which were read to him and also given to him to read:

Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to a lawyer.

In my view these warnings are fatally flawed, for the reasons well stated by the United States Court of Appeals for the Seventh Circuit in *United States ex rel. Williams v. Twomey*, 467 F.2d 1248, 1249–50 (7th Cir. 1972), which involved substantially identical warnings.[1]  Said the court:

> Appellant challenges the adequacy of the advice of his right to an attorney, in light of the qualifying language, "We have no way of furnishing you with an attorney, but one will be appointed for you, if you wish, if and when you go to court."

> *Miranda* requires a clear and unequivocal warning to an accused of his constitutional rights, prior to the taking of any statement, whether exculpatory or inculpatory, during interrogation occurring after an accused is taken into custody.  One of those rights is, of course, the right to the presence of counsel, hired or appointed, before and during any police questioning.  Referring to the necessary warning of the right to appointed counsel at this crucial stage of the accusatory process, the Supreme Court said:

> > "The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present.  As with the warnings of the right to remain silent and of the general right to counsel, only

---

1.  The warnings in *Williams* read:

Warning as to Rights

Before we ask you any questions, it is our duty as police officers to advise you of your rights and warn you of the consequences of waiving your rights.

You have the absolute right to remain silent.

Anything you say to us can be used against you in court.

You have the right to talk to an attorney before answering any questions and to have an attorney present with you during questioning.

You have this same right to the advice and presence of an attorney whether you can afford to hire one or not.  We have no way of furnishing you with an attorney, but one will be appointed for you, if you wish, if and when you go to court.

If you decide to answer questions now without an attorney present, you will still have the right to stop answering at any time.  You also have the right to stop answering any time until you talk to an attorney.

by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it." *Miranda,* 384 U.S. 436 at 473, 86 S.Ct. 1602 at 1627, 16 L.Ed.2d 694 at 723.

We hold that the warning given here was not an "effective and express explanation;" to the contrary, it was equivocal and ambiguous. In one breath appellant was informed that he had the right to appointed counsel during questioning. In the next breath, he was told that counsel could not be provided until later. In other words, the statement that no lawyer can be provided at the moment and can only be obtained if and when the accused reaches court substantially restricts the absolute right to counsel previously stated; it conveys the contradictory alternative message that an indigent is first entitled to counsel upon an appearance in court at some unknown, future time. The entire warning is therefore, at best, misleading and confusing and, at worst, constitutes a subtle temptation to the unsophisticated, indigent accused to forego the right to counsel at this critical moment.

The practice of police interrogation of an accused, after informing him that counsel cannot be provided at the present time, is a practice anticipated and expressly prohibited by the *Miranda* decision.

" . . . if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation. If authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth Amendment privilege so long as they do not question him during that time." *Miranda,* 384 U.S. 436 at 474, 86 S.Ct. 1602 at 1628, 16 L.Ed.2d 694 at 724.

The majority prefers the analysis of *Wright v. North Carolina,* 483 F.2d 405 (4th Cir. 1973), *cert. denied,* 415 U.S. 936, 94 S.Ct. 1452, 39 L.Ed.2d 494 (1973), which is in large

part based on the reasoning of *United States v. Lacy*, 446
F.2d 511 (5th Cir. 1971), and *Massimo v. United States*, 463
F.2d 1171 (2d Cir. 1972), *cert. denied*, 409 U.S. 1117, 93 S.Ct.
920, 34 L.Ed.2d 700 (1973). (*Wright, Lacy* and *Massimo* also
involved the same kind of warnings as in *Williams* and here.)
In *Lacy* the Fifth Circuit found that the two requirements
of *Lathers v. United States*, 396 F.2d 524 (5th Cir. 1968), had
been met, namely, that a defendant must be informed that
he has the right to the presence of attorney, and that the
right is to have an attorney "before he utter[s] a syllable,"
and stated, "[T]hat the attorney was not to be appointed
until later seems immaterial since Lacy was informed that
he had the right to put off answering any questions until the
time when he did have an appointed attorney." 446 F.2d at
513. In *Massimo* the Second Circuit reasoned that since the
defendant had been warned that he could have an attorney
*during* questioning, "[t]he only conclusion [the defendant]
would have been justified in reaching on the basis of the
warning was that, since he was clearly entitled to have a
lawyer present during questioning and since no lawyer could
now be provided, he could not now be questioned." 463 F.2d
at 1174. I have several objections to these analyses.

First, they require defendants to possess a sophisticated
knowledge of logic. As the Seventh Circuit illustrated in
*Williams*, the warnings quoted are ambiguous and seemingly
internally inconsistent. True, some defendants may possess
the sophistication necessary to puzzle through the syllogism
suggested in *Massimo*; but such defendants were not the
object of the Supreme Court's attention in *Miranda*. In
explaining the necessity of advising defendants of their
right to counsel at an interrogation, the Court said:

> The accused who does not know his rights and therefore
> does not make a request [for counsel] may be the person
> who most needs counsel. As the California Supreme
> Court has aptly put it:
>
> > "Finally, we must recognize that the imposition of the
> > requirement for the request would discriminate against
> > the defendant who does not know his rights. The

defendant who does not ask for counsel is the very defendant who most needs counsel. We cannot penalize a defendant who, not understanding his constitutional rights, does not make the formal request and by such failure demonstrates his helplessness. To require the request would be to favor the defendant whose sophistication or status had fortuitously prompted him to make it." *People v. Dorado*, 62 Cal.2d 338, 351, 42 Cal.Rptr. 169, 177–178, 398 P.2d 361, 369–370 (1965) (Tobriner, J.). *Miranda v. Arizona*, 384 U.S. 436, 470–71, 86 S.Ct. 1602, 1626, 16 L.Ed.2d 694 (1966).

Second, at least so far as this court is concerned, there is a prescribed standard by which variations on the *Miranda* formulation are to be judged; tested by this standard, the warnings in this case fail. Our Supreme Court stated in *Commonwealth v. Singleton*, 439 Pa. 185, 190, 266 A.2d 753, 755 (1970):

Even though the Court [in *Miranda*] failed to set forth a single permissible formulation of this warning, however, they did clearly indicate that deviation from the prescribed formulation of the various warnings would be permissible only when the offered version is *more* likely to give a suspect a *better* understanding of his constitutional rights and a *heightened awareness* of the seriousness of his situation.

It cannot seriously be maintained that the pretzel-like warnings here—intertwining, contradictory, and ambiguous as they are—gave appellant "a better understanding of his constitutional rights" than a straightforward recitation of those rights would have.[2]

Finally, the warnings contain a misstatement of fact. The police *do* have a way of giving a suspect a lawyer, at least to the extent of putting him in touch with a lawyer.

---

**2.** In one sense the warnings may have given appellant "a heightened awareness of the seriousness of his situation," for they said, in effect: "There is no way you can get a lawyer now if you can't afford one, but you must still decide, without one, whether you are willing to answer our questions." However, veiled threats are certainly *not* what the Supreme Court had in mind.

220

In Philadelphia County, for example, an attorney from the Defender Association is on duty around-the-clock at the Police Administration Building, to make himself available to any indigent suspect who invokes his right to counsel. *See* V. Ziccardi, Public Defender Representation in Pennsylvania 13–16 (June 1974) (report to Court Administrator of Pennsylvania). What the practice is in Northampton County in this regard I cannot say, but I do not have to. By the Public Defender Act,[3] the Public Defender's Office of that county

> shall be responsible for furnishing legal counsel, in the following types of cases, to any person who, for lack of sufficient funds, is unable to obtain legal counsel:
>
> .     .     .     .     .
>
> (11) In any other situation were [*sic*; "where"] representation is constitutionally required.

16 P.S. § 9960.6(a)(11).

From this duty imposed by statute on the Northampton County Public Defender's Office, it follows that to "give" appellant an attorney even before he went to court, the police needed only to provide him with a telephone and a telephone number of the Defender's Office.

2

Even if all of the United States Circuit Courts of Appeal and the United States Supreme Court were to approve the formulation of warnings here in question, I would still urge that we hold them inadequate under our state Constitution.

Although the decisions of the United States Supreme Court are dispositive in defining rights under the federal Constitution, the state courts remain responsible for defining and protecting rights under the state Constitution. *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975). *See also People v. Disbrow*, 16 Cal.3d 101, 127 Cal.Rptr. 360, 545 P.2d 272 (1976); *State v. Johnson*, 68 N.J. 349, 346 A.2d 66 (1975); *State v. Santiago*, 53 Haw. 254, 492 P.2d 657 (1971). *See generally* Brennan, *State Constitutions and the*

3. Act of Dec. 2, 1968, P.L. 1144, No. 358; 16 P.S. §§ 9960.1 *et seq.* (Supp.1976).

*Protection of Individual Rights*, 90 Harv.L.Rev. 489, 498–502 (1977). Our Constitution guarantees that "[i]n all criminal prosecutions the accused hath a right to be heard by himself and his counsel . . . ; he cannot be compelled to give evidence against himself . . . ." Pa.Const., art. 1, § 9. Our Supreme Court has suggested that this guarantee may lead our courts to require warnings that are more specific, or more explicit, than those required by the federal Constitution. *See Commonwealth v. Romberger*, 464 Pa. 488, 496–99, 347 A.2d 460, 464–65 (1975). I think we should do so here.

### 3

Finally, unlike the majority, I am not persuaded that appellant understood his right to counsel, and waived it, from the mere fact that he refused to put his oral statement into written form without an attorney present. Laymen tend to think that attorneys are required only when it comes time to "put it in writing." Appellant apparently thought so; and to me this signifies that he thought either that he could make oral statements with impunity, or that he had no means of getting an attorney's advice about making such statements. I suggest that this apparent misunderstanding of his constitutional rights very likely resulted directly from the misleading warnings here at issue. *Cf. Commonwealth v. Scoggins*, 451 Pa. 472, 304 A.2d 102 (1973) (although warnings did not clearly say that defendant was entitled to counsel *during* questioning, held that Commonwealth proved waiver by (1) defendant's testimony ("[T]hey said I didn't have to say nothing without my lawyer present.") and (2) clear and adequate warnings given three times in two days before the complained-of warnings).

Furthermore, it must be noted that the majority has misplaced the burden of proof of waiver. Thus it says: "The ruling of the trial court that his verbal statements to the police might be admitted in evidence was correct, the Commonwealth having proved that appellant received his *Miranda* warnings, and there being no showing that he

misunderstood the warnings given to him." Majority Opinion 247 Pa.Super. at 214, 372 A.2d at 14. This is doubly mistaken. First, the Commonwealth did not prove that appellant had "received his *Miranda* warnings"; its failure in this regard has been discussed already. Second, no defendant is obliged to "show[ ] that he misunderstood the warnings given him." To the contrary: "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Arizona, supra* 384 U.S at 475, 86 S.Ct. at 1628.

Since the warnings were inadequate, and since the Commonwealth has not proved that appellant knowingly and voluntarily waived his right to remain silent and his right to counsel, appellant's statements to the police should have been suppressed.

HOFFMAN, J., joins in this opinion.