**Ali Abdul–Habib HAKEEM**
**a/k/a Thomas Wooten**

v.

**Howard L. BEYER; Attorney General of the State of New Jersey, Howard L. Beyer, Superintendent, and Robert J. Del Tufo, Attorney General of the State of New Jersey, Appellants in No. 91–5848**

**Ali Abdul–Habib Hakeem, Appellant in No. 91–5884.**

**Nos. 91–5848, 91–5884.**

United States Court of Appeals, Third Circuit.

Argued Sept. 21, 1992.

Decided March 31, 1993.

---

**3.** In view of this conclusion, we do not address the issue-preclusion question.

James A. Plaisted (argued), Judith A. Hartz, Walder, Sondak, Berkeley & Brogan, P.A., Roseland, NJ, for Ali Abdul–Habib Hakeem.

Robert J. Del Tufo, Atty. Gen., of NJ, Mark P. Cronin (argued), Office of Atty. Gen., Div. of Crim. Justice, Appellate Bureau, Trenton, NJ, for Howard L. Beyer, Superintendent, and Robert J. Del Tufo, Atty. Gen. of State of NJ.

Present: HUTCHINSON, ALITO and SEITZ, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Appellants Howard Beyer, the Superintendent of Trenton State Prison, and Robert Del Tufo, the Attorney General of New Jersey, appeal an order of the United States District Court for the District of New Jersey granting Ali Abdul–Habib Hakeem's (Hakeem)[1] petition for a writ of habeas corpus. The district court based its order on a holding that a fourteen and one-half month delay in bringing Hakeem to trial it found attributable to the negligence of the state violated the Speedy Trial Clause of the Sixth Amendment to the United States Constitution. Hakeem cross-appeals rulings of the district court rejecting the other grounds he asserted as a basis for habeas relief.

The district court had jurisdiction over Hakeem's petition pursuant to 28 U.S.C.A. § 2254 (West 1977). We have appellate jurisdiction pursuant to 28 U.S.C.A. § 2253 (West 1971) and 28 U.S.C.A. § 1291 (West Supp.1992).

We will affirm the district court on the issues that are the subject of Hakeem's cross-appeal and, therefore, deny Hakeem appellate relief on that cross-appeal docketed at our No. 91–5884. Except for the double jeopardy issue Hakeem raises on his cross-appeal, we do so essentially for the reasons set forth in the district court's opinion. *See Hakeem v. Beyer*, 774 F.Supp. 276 (D.N.J.1991).[2] On the double jeopardy issue, we set forth our reasoning, which differs somewhat from that of the

---

1. During his 1985 state criminal trial, Hakeem was known as Thomas Wooten. He has since changed his name.

2. In addition to double jeopardy and denial of his constitutional right to a speedy trial, Hakeem raises the following issues in support of his contention that the district court erred in failing to grant him habeas on additional grounds: the state trial court unconstitutionally admitted an identification made at the scene of the crime, the state trial court improperly empaneled certain jurors, his sentence exceeds the maximum permitted under New Jersey law, he was denied a fair trial by prosecutorial misconduct in failing to turn over a hearing transcript and his Sixth Amendment right to counsel was denied because of ineffective assistance of counsel.

district court, in Part III of this opinion *infra.*

On the state's appeal at No. 91–5848, we will vacate the district court's order granting Hakeem a writ of habeas corpus on his claim that the state violated his Sixth Amendment right to a speedy trial and remand the case to it for an evidentiary hearing on the cause of the delay. With respect to the cause of the delay we hold that the district court properly disregarded the presumption of correctness that attaches to a finding of fact of a state court under 28 U.S.C.A. § 2254(d) because the state court's finding was not fairly supported by the record as required by § 2254(d)(8). In situations where a state court's finding of fact is not fairly supported by the record, *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), requires the district court to hold a hearing to resolve those material facts that are in dispute. The district court failed to do this with respect to the cause of the delay, a material fact that is genuinely in dispute on the state record in this case. Accordingly we will remand for an evidentiary hearing on the cause of the delay.

Resolution of the speedy trial issue also requires a balancing of the factors set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), based on appropriate findings of fact and that balancing is a matter for the district court in the first instance. On the record before us, however, we disagree with the district court's decision on which side of the balance some of the factors should be placed and also, to some extent, with the weight it afforded to those factors that go on Hakeem's side. Specifically, we agree with the district court that a fourteen and one-half month delay triggers a *Barker* inquiry. We also agree with the district court that Hakeem has demonstrated no cognizable prejudice beyond that which is inherent in the fourteen and one-half month delay in bringing him to trial, but we disagree with the district court's conclusion that this delay of itself places the factor of prejudice on Hakeem's side of the balance. We also hold, in partial disagreement with the dis-

trict court, that Hakeem's assertion of his right to a speedy trial weighs only slightly in his favor.

## I.

Between August 14, 1983 and November 3, 1983, the Neighborhood Market Grocery Store (the "Market") located in Newark, New Jersey was robbed four times. On August 14, 1983, three individuals, one armed with a revolver, stole over $100.00. At trial, Elois Johnson (Johnson), the owner, and Joseph Hankerson (Hankerson), a store employee, identified Hakeem as the armed perpetrator. On September 14, 1983, two males again robbed the Market, taking over $100.00. Johnson stated to the police that one of the individuals had robbed his store one month earlier. On October 16, 1983, approximately $200.00 was taken and Johnson informed the police that he believed the same individual was involved in this robbery as well.

The particular robbery that gives rise to this appeal occurred on November 3, 1983. On that day, at approximately 2:50 p.m., three individuals, one armed with a sawed-off shotgun and another with a .38 caliber revolver, entered the Market. They forced Johnson and Hankerson to the back of the store, demanded money and left with between $300.00 and $400.00 in cash and some food stamps contained in a red pouch. Johnson and Hankerson gave the police a description of the robbers and their getaway car. Another witness supplied the police with the car's license number. After the plate was traced to an Oldsmobile owned by Bennie Roberts of Newark, New Jersey, the police established surveillance around Roberts' home.

At approximately 3:35 p.m., police officers stopped a black Oldsmobile fitting the witness's general description of the getaway car. They ordered the three black, male occupants out of the car at gunpoint and frisked them but found no concealed weapons. A search of the car, however, uncovered a loaded 13–gauge sawed-off shotgun partially hidden by a blanket on the rear floor, near where Hakeem had

been sitting. The search of the car also revealed a .38 caliber revolver loaded with six hollow-point bullets, four shotgun shells and a red pouch. The driver, Bernie Roberts, and his passengers Mubaarek Hayy (Hayy) and Hakeem were at once arrested.

The police officers placed the three suspects in the back of a patrol car and brought them to the Market for identification. Hankerson and Johnson came outside to view the suspects individually. Both identified Hakeem as one of the robbers. Hakeem was taken to the station house for processing. There, a search of his person produced $15.10 in currency and some food stamps.

At trial, Hakeem vigorously proclaimed his innocence. He stated that just before the robbery he had been visiting his sick father and had then stopped by the offices of the Newark Department of Sanitation to seek employment. There he alleges he spoke with two receptionists. In pretrial interviews that occurred about fourteen months after the alleged visit, the receptionists were unable to corroborate Hakeem's alibi. They were not called at trial. Hakeem's father died prior to trial, in March of 1984.

Hakeem testified he accepted a ride with the two other suspects after he stopped at the Sanitation Department, but knew nothing of the robbery and had never seen the weapons found in the car. He also denied involvement in any of the other robberies and challenged Johnson's identification outside the Market.

On February 7, 1984, a grand jury returned a nine count indictment against Hakeem in connection with the four robberies of the Market. Counts I through III involved the three robberies that occurred before November 3, 1983. The remaining six counts stemmed from the November 3, 1983 robbery of the Market.

On March 7, 1984, Hakeem entered a plea of not guilty to all charges. By a letter dated April 5, 1984 and addressed only to "Honorable Sir," Hakeem complained of excessive bail and that he had not yet been afforded discovery. The letter was forwarded to a state court judge

who acknowledged the letter on April 12 and informed Hakeem by form letter that the court was "[f]orwarding a copy to your attorney with instructions to see you immediately and take any required action." Joint Appendix (App.) at 244.

Hakeem asserts that he never met his first appointed defense attorney. He claims he informed his second appointed defender about his alibi on March 23, 1984 but, despite his own repeated requests and the letters forwarded to her by the state judge, she made no attempt to contact his alibi witnesses. Hakeem also expressed dissatisfaction with this defender in a letter to the office of the state public defender in which he asked for the appointment of someone else. That request was refused. Two weeks before trial, Hakeem discharged this second appointed counsel and retained a private attorney. His privately retained counsel then interviewed the two Sanitation Department receptionists and learned they were unable to corroborate Hakeem's story.

In the meantime, on May 5, 1984, Hakeem had presented another *pro se* request to the state judge seeking dismissal of the charges against him because of unnecessary delay. No other party was served. On May 7, 1984, the state judge acknowledged this second communication from Hakeem and informed him that it too would be forwarded to his counsel. On October 16, 1984, Hakeem claims he executed yet another *pro se* motion requesting dismissal of the indictment based upon failure to prosecute the case within 180 days of the indictment. Although the record contains a copy of this motion, the prosecutor's office states that it was not served and neither the judge's chambers nor the clerk of the state court have any record of how it was processed.

On December 11, 1984, Hakeem filed his first petition for a writ of habeas corpus with the United States District Court for the District of New Jersey alleging: (1) ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution; (2) denial of a speedy trial in violation of

the Sixth and Fourteenth Amendments; and (3) the imposition of cruel and unusual punishments in violation of the Eighth and Fourteenth Amendments. The district court dismissed this petition, without prejudice, for failure to exhaust state remedies based on Hakeem's improper filing and service of his motions upon the relevant parties at the state court level. *Wooten v. Butler*, No. 84–5134 (D.N.J. Mar. 25, 1985).

On January 7, 1985, the New Jersey Superior Court heard and denied a motion to suppress evidence the state had obtained during Hakeem's arrest. *State v. Wooten*, No. 604–2–84 (N.J.Super.Ct. Jan. 7, 1985). On January 14, 1985, the Superior Court held a hearing pursuant to *State v. Sands*, 76 N.J. 127, 386 A.2d 378 (1978), at which it was determined that all of Hakeem's prior convictions would be admissible for impeachment purposes if he chose to testify at trial. On January 16, 1985, the Superior Court held a *Wade*[3] hearing and determined that the state's out-of-court identifications of Hakeem would be admissible.

The state tried Hakeem's co-defendant, Hayy, immediately before Hakeem. At Hayy's trial as well as at Hakeem's, Hankerson, the store clerk, testified somewhat differently than he had at Hayy's *Wade* hearing on January 9, 1985. At Hayy's *Wade* hearing, Hankerson identified Hayy as the individual who carried the shotgun and wore a beard on the day of the November 3 robbery. At both Hakeem's and Hayy's trial, however, Hankerson testified it was Hakeem who held the shotgun and wore a beard.

Hakeem's trial counsel never asked for a transcript of the *Wade* hearing and the state never supplied him with one, but by the time of Hakeem's trial on January 16, 1985, counsel had obtained the specifics of Hankerson's prior testimony from the court reporter who recorded Hayy's *Wade* hearing. Thus, at Hakeem's trial on January 16, 1985, the defense knew that Hankerson had changed his description of the perpetrator between the time of Hayy's *Wade* hearing and Hakeem's trial. Based on this information, Hakeem's lawyer used

Hankerson's conflicting prior statement in cross-examining him. After Hankerson admitted the contradiction, the defense did not take him through a line by line examination of the prior testimony. The jury found Hakeem guilty on Counts IV through IX, the charges stemming from the November robbery, but acquitted him on the other charges that stemmed from the three earlier robberies.

On March 7, 1985, the New Jersey trial court enhanced Hakeem's sentences after determining he had the status of a persistent offender under state law. It sentenced Hakeem to twenty-five years imprisonment for armed robbery, eighteen months for aggravated assault, five years for unlawful possession of a firearm and five years for unlawful possession of a sawed off shotgun, all to be served concurrently. In addition, the court sentenced Hakeem to fifteen years for possession of a weapon for an unlawful purpose and eighteen months for unlawful possession of hollow-nosed bullets. It ordered the latter two sentences to be served concurrently with each other but consecutively with the first three and credited Hakeem with the 420 days time served during his pretrial and presentence incarceration.

Hakeem appealed his sentences asserting nine issues. The New Jersey Superior Court, Appellate Division, affirmed the convictions in an unpublished *per curiam* opinion. *State v. Wooten*, No. A–3657–84T4 (N.J.Super.Ct.App.Div. June 30, 1988) (per curiam). Hakeem filed a petition for certification *nunc pro tunc* to the New Jersey Supreme Court. It was denied on February 21, 1989. He then sought post-conviction relief from the New Jersey Superior Court based on his belief that his sentences violated the Fifth and Eighth Amendments. The Superior Court dismissed his petition without prejudice. *State v. Wooten*, No. 609–2–84 (N.J.Super.Ct. Dec. 8, 1989).

On June 11, 1990, Hakeem filed a *pro se* habeas corpus petition in the United States District Court for the District of New Jer-

---

**3.** *See United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

sey alleging seven grounds for relief. *Hakeem v. Beyer,* 774 F.Supp. at 282–83. The district court held, *inter alia,* that Hakeem was not denied effective assistance of counsel, the identification testimony used at trial was admissible and the state did not engage in prosecutorial misconduct in refusing to furnish Hakeem's counsel with a copy of the possibly exculpatory transcript. *Id.* at 286–87, 290. The district court did, however, conclude that Hakeem was denied his Sixth Amendment right to a speedy trial. *Id.* at 296. It ordered Hakeem discharged from custody but immediately stayed that order pending the outcome of this appeal. *Id.* at 299. Thereafter, on December 23, 1991, this Court denied Hakeem's motion to vacate the stay.

## II.

■ Hakeem's double jeopardy issue presents a question of law subject to plenary review. *See United States v. Garcia,* 919 F.2d 881, 885 (3d Cir.1990); *Daniel v. Warden,* 794 F.2d 880, 883 (3d Cir.1986). The district court's determination that Hakeem has established a violation of his constitutional right to a speedy trial is reviewed *de novo. Burkett v. Fulcomer,* 951 F.2d 1431, 1437–38 (3d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 3055, 120 L.Ed.2d 921 (1992). Where an evidentiary hearing is not mandatory, the district court has discretion to determine whether a habeas corpus petitioner is entitled to a hearing and its determination is reviewable for abuse of discretion. *Reese v. Fulcomer,* 946 F.2d 247, 256 (3d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992). Because the district court never conducted an evidentiary hearing, we also exercise *de novo* review over the factual inferences the district court drew from the record. *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 291 n. 5 (3d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 280, 116 L.Ed.2d 232 (1991).

## III.

The district court concluded that Hakeem's dual convictions and consecutive sentences for first degree armed robbery under N.J.Stat.Ann. § 2C:15–1 (West 1982) and possession of a weapon for an unlawful purpose under N.J.Stat.Ann. § 2C:39–4 (West Supp.1992) did not place him twice in jeopardy because the Appellate Division of the New Jersey Superior Court determined that the state legislature intended to formulate two specific crimes and punishments. The district court therefore held that the United States Supreme Court's test for double jeopardy announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), did not apply. *See Hakeem,* 774 F.Supp. at 285 (citing *Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983) (state legislature may proscribe separate punishments for single act)). The district court did not consider the problem that a dual conviction creates when one crime is a lesser included component of the other. *See Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990); *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). Though the appellate division, in considering Hakeem's direct appeal, held that possession of a weapon is a separate offense from assault, it did not decide whether the legislature intended possession of a weapon to be an offense separate from armed first degree robbery. On this point, other cases decided by the Appellate Division leave New Jersey law unclear. *See State v. Jones,* 213 N.J.Super. 562, 517 A.2d 1219 (App.Div.1986) (holding two sentences permissible). *But see State v. Porter,* 210 N.J.Super. 383, 510 A.2d 49 (App.Div.) (conviction for weapon possession merged with first degree armed robbery conviction), *cert. denied,* 105 N.J. 556, 523 A.2d 191 (1986).

■ The state court's rejection, without discussion, of Hakeem's double jeopardy attacks on his dual convictions for robbery and possession does not by itself conclusively establish a legislative intent that would avoid *Blockburger.* If it did, *Blockburger* analysis would seldom be necessary on federal habeas because state affirmance of a dual conviction could bring our double jeopardy inquiry to an end. Nevertheless,

in Hakeem's case, we are satisfied that his dual convictions survive *Blockburger* analysis because the two crimes have different elements. *See Vitale,* 447 U.S. at 416, 100 S.Ct. at 2265 ("[I]f 'each statute requires proof of an additional fact which the other does not,' the offenses are not the same under the *Blockburger* test.") (quoting *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977) (emphasis omitted)). New Jersey's possession statute requires proof that a defendant intended to use the weapon unlawfully.[4] Its first degree robbery statute requires mere possession of a weapon at the time the offense is committed without any proof that the actor intended to use or exhibit it.[5] Consequently, Hakeem was not sentenced in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, which has now been incorporated into the due process clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969).

## IV.

Among the other issues the parties present to us, only the Sixth Amendment speedy trial issue requires further discussion. The Sixth Amendment states in part, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial...." U.S. Const. amend VI. This provision is binding on the states through the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967).

█ The United States Supreme Court has adopted a flexible balancing test to adjudicate alleged violations of the Sixth Amendment Speedy Trial Clause. *See*

*Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The factors to be considered are: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192. All factors must be considered and weighed as no one factor is dispositive nor "talismanic." *Id.* at 533, 92 S.Ct. at 2193.

### A.

The first factor, the length of delay, actually entails two inquiries.

Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. This latter enquiry is significant to the speedy trial analysis because ... the presumption that pretrial delay has prejudiced the accused intensifies over time.

*Doggett v. United States,* —— U.S. ——, —— – ——, 112 S.Ct. 2686, 2690–91, 120 L.Ed.2d 520 (1992) (citations omitted). "Presumptive prejudice," when used in this threshold context simply "marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Id.,* —— U.S. at —— n. 1, 112 S.Ct. at 2961 n. 1. Such "presumptive prejudice"

---

**4.** The New Jersey Code of Criminal Justice provides:

**2C:39–4. Possession of weapons for unlawful purposes**

a. **Firearms.** Any person who has in his possession any firearm *with a purpose to use it unlawfully* against the person or property of another is guilty of a crime of the second degree.

N.J.Stat.Ann. § 2C:39–4 (West Supp.1992) (emphasis added).

**5.** The New Jersey Code of Criminal Justice provides:

**2C:15–1. Robbery**

. . . . .

b. **Grading.** Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor ... *is armed with,* or uses or threatens the immediate use of a deadly weapon.

N.J.Stat.Ann. § 2C:15–1 (West 1982) (emphasis added).

cannot alone create a Sixth Amendment violation but "it is part of the mix of relevant facts, and its importance increases with the length of delay." *Id.*, at ——, 112 S.Ct. at 2693.

▮ Thus, the delay involved first figures into the speedy trial equation for the purpose of determining whether it is long enough to trigger inquiry into the other *Barker* factors. *See Barker*, 407 U.S. at 530, 92 S.Ct. at 2192 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."). If the delay is long enough to trigger inquiry, as it continues to lengthen it imperceptibly grows in a second aspect, incrementally adding its weight to any actual harm that the record shows the defendant suffered as a result of the delay in question.

▮ In both aspects, at a minimum, the delay is measured from the date of formal accusation, *i.e.*, from the earliest date of arrest or indictment until the commencement of trial. *See United States v. MacDonald*, 456 U.S. 1, 6–7, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982).[6] The police arrested Hakeem on November 3, 1983, and the trial commenced on January 16, 1985, a fourteen and one-half month delay. We have held that a "delay of 14 months is ... not dispositive in and of itself, but is sufficiently lengthy to warrant an inquiry into the other facts." *United States ex rel. Stukes v. Shovlin*, 464 F.2d 1211, 1214 (3d Cir.1972); *accord Wells v. Petsock*, 941 F.2d 253, 258 (3d Cir.1991) (seven month pretrial incarceration triggers plenary inquiry into remaining *Barker* factors), *cert. denied*, —— U.S. ——, 112 S.Ct. 3038, 120 L.Ed.2d 906 (1992). Therefore, though rigid time limitations have been rejected in analyzing the constitutional right to a speedy trial, *see Wells*, 941 F.2d at 257–58, we agree with the district court that a fourteen and one-half month detention before trial merits further inquiry. *See also United States v. Koller*, 956 F.2d 1408, 1414 (7th Cir.1992) (eight and one-half

month delay triggers inquiry); *United States v. Henson*, 945 F.2d 430, 437 (1st Cir.1991) (court assumed nine and one-half month delay raised presumption of prejudice triggering inquiry).

Accordingly, the *Barker* factors must be balanced to determine whether a Sixth Amendment violation has occurred. The most important factor is prejudice. *See Wells*, 941 F.2d at 258. We will, therefore, turn first to a consideration of that factor.

### B.

▮ Various types of prejudice can result from a pretrial delay: oppressive pretrial incarceration, the accused's anxiety and concern over the outcome of the litigation or impairment of the defense, including general concern over the delay's effect on the reliability of the truth finding process. *Id.* (citing *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193). Cognizable injury may exist in any one of these areas. *See Moore v. Arizona*, 414 U.S. 25, 26–27, 94 S.Ct. 188, 190, 38 L.Ed.2d 183 (1973). To determine whether Hakeem suffered any prejudice in these respects, we think it is appropriate to analyze the direct impact this fourteen and one-half month delay had on Hakeem separately from its impact on the reliability of his convictions. With respect to all its various types, the burden of showing prejudice lies with the individual claiming the violation and "[the] possibility of prejudice is not sufficient to support [the] position that ... speedy trial rights [are being] violated." *United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986).

### 1.

Because the district court found it dispositive, we first consider the prejudice that flows from oppressive pretrial incarceration. In *Wells*, we decided that seven months of pretrial incarceration were insufficient to create an oppressive situation absent substandard conditions. *Wells*, 941 F.2d at 257–58. In the instant case, the

---

**6.** In *Burkett v. Cunningham*, 826 F.2d 1208, 1220 (3d Cir.1987), we noted the possible relevance of delays that occur between conviction

and sentencing. The parties do not mention any delay during this period, material or otherwise.

district court found that "[Hakeem] ha[d] not demonstrated extraordinary or sub-standard conditions of confinement," but nonetheless concluded that "the length of his incarceration obviates the necessity of such proof." *Hakeem,* 774 F.Supp. at 296.

The district court, in reaching that conclusion, emphasized the harm that attends pretrial incarceration. It relied upon what it called a "flexible analysis," stating that unjustified delay must be limited in time if prejudice is to be avoided. It set a bright-line time limit holding that "[t]hirteen months of pretrial confinement without any justification warrants a. finding of [prejudice of constitutional dimensions]." *Id.*

■■■ We disagree. We do not think pretrial incarceration of either thirteen or fourteen and one-half months demonstrates *per se* oppressive pretrial delay.[7] We stated in *Wells:*

> [T]he seriousness of a deprivation of liberty due to pretrial incarceration will vary with the conditions of the defendant's confinement. Indeed, the [Supreme] Court held that the speedy trial guarantee was intended to prevent *"oppressive* pretrial incarceration." *Barker,* 407 U.S. at 532 [92 S.Ct. at 2193] (emphasis added). All pretrial detention is not equally oppressive or precisely definable. Courts in the past have tolerated the deprivation of an accused's liberty prior to trial for periods longer than seven months under conditions of incarceration prevailing in those cases. However, were the oppressiveness of such conditions to worsen or the treatment of the accused to fall below established, standard levels, so as to place the physical or mental integrity of the accused in jeopardy for example, the length of pretrial delay which a just system in a civilized society could tolerate would have to be reconsidered.

*Wells,* 941 F.2d at 257 (footnote omitted). Prior decisions of this Court have given

some weight to the absence of pretrial incarceration in finding insufficient prejudice. *See Government of V.I. v. Pemberton,* 813 F.2d 626, 629–30 (3d Cir.1987); *Government of V.I. v. Burmingham,* 788 F.2d 933, 937 (3d Cir.1986). The Supreme Court has also expressed concern about the potential harm that may be visited upon a pretrial detainee. *See Barker,* 407 U.S. at 532–33, 92 S.Ct. at 2192–93. We do not believe it follows, however, that pretrial detention, coupled with a fourteen and one-half month delay, permits an automatic inference of enough prejudice to balance that factor in a petitioner's favor without proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment. *Cf. Wells,* 941 F.2d at 257–58.

Hakeem cites *Redd v. Sowders,* 809 F.2d 1266 (6th Cir.1987), in support of the district court's analysis of the prejudicial weight of overly long pre-trial imprisonment. Discussing the effect of pretrial incarceration, the court stated in *Redd* that "[t]he time spent in jail awaiting trial is said to destroy human character." *Id.* at 1272 n. 5. "[Pretrial delay] often means loss of job; it disrupts family life; and it enforces idleness.... The time spent in jail is simply dead time." *Id.* (quoting *Barker,* 407 U.S. at 532–33, 92 S.Ct. at 2193). In *Redd,* the Court of Appeals for the Sixth Circuit held that a ten month delay was prejudicial after noting that the defendant had suffered additional prejudice when the delay contributed to his inability to locate alibi witnesses. *Id.* at 1272. In the instant case, the district court found the delay in bringing Hakeem to trial did not prejudice the defense. *Hakeem,* 774 F.Supp. at 294. On the record before us, we do not think that finding is erroneous.[8] Accordingly, *Redd* is distinguishable and we find it otherwise unpersuasive on the question whether Hakeem suffered oppressive pre-trial incarceration. *See, e.g.,*

---

7. We note the district court seemingly based its analysis, in part, on a delay of thirteen months. Because delays for the purposes of speedy trial issues are calculated from the time of indictment or arrest, the delay in this case was fourteen and one-half months and it is that fourteen and one-half month interval on which we base our analysis.

8. We consider the issue of prejudice to the defense in more detail in Part IV.B.3., *infra.*

*Barker*, 407 U.S. at 534, 92 S.Ct. at 2194 (recognizing Barker lived under "cloud of suspicion and anxiety" for four years although holding ten month pretrial incarceration not prejudicial absent showing of further prejudice such as loss of witnesses).

Moreover, Hakeem has not shown that loss of employment, disruption of family life or excessive mental anguish resulted from his pre-trial imprisonment. The district court's adoption of either a thirteen or fourteen and one-half month brightline rule to establish oppressive pre-trial incarceration would change the manner in which this Court has heretofore balanced the *Barker* factors. *See Burkett*, 951 F.2d at 1439, 1443–45 (requiring defendant to demonstrate prejudice after ten months of pretrial incarceration and additional twenty-nine months of incarceration awaiting sentencing); *Wells*, 941 F.2d at 257 (looking to substandard conditions of confinement for prejudice after seven month pretrial incarceration). If we were to follow the district court's articulation of the standard, it would be difficult to avoid a holding of prejudicial delay in any case in which the defendant suffered pre-trial incarceration and the delay was long enough to trigger inquiry.

At its core, the Sixth Amendment's guarantee of a speedy trial shields the individual from deprivations of personal liberty. *See Loud Hawk*, 474 U.S. at 312, 106 S.Ct. at 654–55. Thus, though time alone may, in some cases, rise to the level of "oppressive pretrial incarceration," credit for time served "mitigate[s] the potential oppressive effects of ... incarceration." *Gray v. King*, 724 F.2d 1199, 1204 (5th Cir.), *cert. denied*, 469 U.S. 980, 105 S.Ct. 381, 83 L.Ed.2d 316 (1984). Hakeem did receive credit for all the pretrial time he served. Credit for time served cannot cure every unexcused delay but where the defendant has not pointed to any evidence of additional, specific prejudice flowing from the delay, we are unwilling to infer prejudice based on incarceration that the defendant would ultimately have had to serve solely because fourteen and one-half months had elapsed between arrest and trial.

### 2.

Similarly, Hakeem cannot prevail merely by claiming that fourteen and one-half months of anxiety over the outcome of the trial has prejudiced him to the extent necessary to prevail on a Sixth Amendment claim. Vague allegations of anxiety are insufficient to state a cognizable claim. In *United States v. Dreyer*, 533 F.2d 112 (3d Cir.1976), we held that a defendant must show that his anxiety extended beyond that which "is inevitable in a criminal case." *Id.* at 116. In order to reach that level, the petitioner must produce evidence of psychic injury. *See id.* at 115–16. Hakeem has not done so.

Our decision in *Burkett v. Fulcomer* is not to the contrary. *Burkett* stands for the proposition that a habeas petitioner asserting a violation of his constitutional right to a speedy trial must show some objective manifestation of distress if he proposes to establish prejudice as a result of pretrial incarceration. In *Burkett*, we weighed the petitioner's unrebutted testimony that he suffered from loss of sleep, loss of appetite and interference with personal relationships that were severe enough to have resulted in physical manifestations of emotional distress. *Burkett*, 951 F.2d at 1443–44. We concluded Burkett's "imprisonment angst rises above the level of anxiety indigenous to any term of incarceration...." *Id.* at 1444. Although we hesitated to conclude that this evidence of anxiety in and of itself would support relief under *Barker*, we did hold that it tipped the scale slightly in the petitioner's favor; *Burkett*, however, involved a substantially longer period of pretrial incarceration, ten months before trial and twenty-nine months between guilty verdict and sentencing. *Id.* Hakeem has failed to allege or point out in the state court record any evidence of specific harm. Accordingly, that record does not show anxiety sufficient to establish actual prejudice.

### 3.

In order to establish that his defense was prejudiced by the delay, Hakeem alleges specific impairment of his defense in two respects—the belated questioning of the sanitation department secretaries and the death of his father.

▮▮▮▮ Hakeem claims that a prompt trial would have permitted him to call the secretaries to corroborate his alibi defense that he was elsewhere at the time of the robbery.[9] The district court correctly rejected this argument. General allegations that witnesses' memories have faded are insufficient to create prejudice, at least absent extreme delay such as eight and one-half years, or the special circumstances that existed in *Doggett*. *See Koller*, 956 F.2d at 1414.[10] Hakeem has not pointed to any evidence in the state record that shows the secretaries would have been able to corroborate his presence at the sanitation department when the crime with which he was charged was being committed.

▮▮▮▮ Hakeem also asserts that the death of his father, whom he characterizes as another alibi witness, before the case went to trial prejudiced his defense. In *Barker* the Supreme Court noted "[i]f witnesses die or disappear during a delay, the prejudice is obvious." *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. We cannot infer prejudice, however, from this sad event. Hakeem's father died four months after Hakeem's arrest, before the delay had progressed to the point at which any speedy trial inquiry would have been triggered. There is thus no causal connection between the delay in bringing Hakeem to trial and the loss of his father's corroborating testimony.

### 4.

On the factor of prejudice, we must also consider the effect of the United States Supreme Court's intervening decision in *Doggett* where the Supreme Court considered the effect of an eight and one-half year delay between indictment and trial. *Doggett* requires us to examine the possibility of inferring prejudice from extended delays in and of themselves.

In *Doggett*, in deciding whether time alone can constitute prejudicial impairment of the defense, the Supreme Court stated:

[C]onsideration of prejudice is not limited to the specifically demonstrable, and, ... affirmative proof of particularized prejudice is not essential to every speedy trial claim. *Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown." And though time can tilt the case against either side, one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay.

9. Hakeem's argument that the delay impaired his defense is related to his ineffective assistance claim because it was not until fourteen months after arrest that Hakeem's attorney interviewed these alleged alibi witnesses.

10. While the receptionists' inability to corroborate Hakeem's alibi gives some support to his claim of ineffective assistance of counsel, we believe it ultimately fails, essentially for the reasons set forth by the district court. *See Hakeem*, 774 F.Supp. at 287–90. The district court determined that constitutionally defective representation does not in itself entitle a petitioner to habeas relief; the defective representation must have adversely prejudiced the trial. In this case, Hakeem failed to prove prejudice because the sanitation department witnesses were eventually interviewed and there was no indication that they had been able, at an earlier time, to corroborate Hakeem's version of the events. Thus, Hakeem's assertion of prejudice to the defense in connection with the receptionists' testimony fails. Hakeem also argued that his counsel improperly entered into a stipulation as to the testimony of an absent witness which amounted to ineffective assistance. This decision of counsel, however, involved trial strategy and is entitled to deference.

*Doggett,* —— U.S. at ——–——, 112 S.Ct. at 2692–93 (citations and quotation omitted).

■■■ In *Doggett,* the United States Supreme Court drew its inference of prejudice from a delay of eight and one-half years in bringing the case to trial. On this record, we think that the fourteen and one-half months that passed between arrest and trial is insufficient to allow an inference of prejudice solely from the length of the delay. Its magnitude is too small to itself increase the factor of prejudice to a quantity that will perceptively weigh the balance we must make in Hakeem's favor. *Doggett* is otherwise distinguishable from Hakeem's case. There, the defendant appears to have been unaware of the charges pending and so had no reason to prepare a defense. *Doggett,* at ——–——, 112 S.Ct. at 2691–92. Hakeem knew from the day of the robbery that it would be necessary to preserve his alibi. The Supreme Court in *Doggett* was also concerned with the general problem of accurately and fairly determining the truth about events that occurred eight and one-half years before trial. *Id.,* at ——–——, 112 S.Ct. at 2692–93. We do not believe a fourteen and one-half month delay is in the same category as the eight and one-half year delay held prejudicial in *Doggett.*

Thus, agreeing with the district court's determination that the state record fails to establish any specific impairment of the defense, we believe that it erred in inferring or presuming prejudice from Hakeem's pre-trial incarceration and in concluding that the fourteen and one-half month period between arrest and trial prejudiced him absent other specific evidence of the delay's effect on Hakeem's ability to mount his defense. On the record before us, Hakeem cannot prevail on this most important element of the *Barker* test and, in the final analysis, its absence weighs against his claim.

### C.

■■■ We turn next to the question whether Hakeem asserted his speedy trial right in a timely and proper manner. Although delay in asserting the constitutional right to a speedy trial does not constitute a waiver, *Barker,* 407 U.S. at 528, 92 S.Ct. at 2191, "failure to assert the right will make it difficult for [petitioner] to prove that he was denied a speedy trial." *Id.* at 532, 92 S.Ct. at 2193. We have stated that a habeas petitioner must show he made a "reasonable assertion of [the] speedy trial right." *Pemberton,* 813 F.2d at 629. Repeated assertions of the right do not, however, balance this factor in favor of a petitioner when other actions indicate that he is unwilling or unready to go to trial. *United States v. Loud Hawk,* 474 U.S. 302, 313–15, 106 S.Ct. 648, 655–56, 88 L.Ed.2d 640 (1986). Accordingly, other courts have emphasized the need for a petitioner to show he "vigorously pursued a speedy trial" if the factor of its assertion is to be weighed in the petitioner's favor. *Koller,* 956 F.2d at 1414.

Hakeem did make several assertions of his speedy trial right. On May 5, 1984, in *pro se* correspondence with the state trial court, he claimed that his case should be dismissed because of "unnecessary delay." Hakeem also claims to have asserted the right again in an October 16, 1984 *pro se* motion to the trial court, but neither the prosecutor, the state trial court nor its clerk of court received this motion. Finally, on December 11, 1984, only one month before trial, Hakeem filed a petition in the United States District Court alleging, *inter alia,* violation of his Sixth Amendment right to a speedy trial. That petition was denied for a failure to exhaust remedies.

Reasoning that a *pro se* petitioner need not make a procedurally perfect assertion of the right, the district court weighed this factor "heavily in [Hakeem's] favor." *Hakeem,* 774 F.Supp. at 294. The district court concluded that Hakeem's letters to the state trial court put it on notice of Hakeem's complaint and satisfied the *Barker* factor of assertion of the right. It read our decision in *Pemberton* as requiring a habeas petitioner merely to make an assertion that puts the trial court on notice that a violation may be occurring. Once such notice is given, the district court con-

cluded the state had to bring the petitioner to trial or show a valid reason for delay.

In reaching its conclusion that the factor of assertion weighed "heavily" in Hakeem's favor, the district court characterized Hakeem as a *pro se* litigant. In this respect it erred. From March 8, 1984, the day after the arraignment, until January 7, 1985, Patricia Arons (Arons) of the Office of the Public Defender was Hakeem's counsel of record. During the summer of 1984, Hakeem corresponded with Arons about his case a number of times. In addition, the correspondence Hakeem sent to the trial court was forwarded to Arons. We recognize that Hakeem has alleged her representation was constitutionally defective but the district court, after dealing at some length with that contention, decided she was not constitutionally ineffective. *See Hakeem,* 774 F.Supp. at 287–90. We agree. *See supra* note 10. Generally speaking, we will not equate disagreements between a defendant and appointed counsel with *pro se* status. According a counseled litigant equal status with his counsel is not wholly appreciative of the difficulties that a trial court faces in case management when a criminal litigant attempts to act independently of his counsel.

In *Schandelmeier v. Cunningham,* 819 F.2d 52 (3d Cir.1986), *cert. denied,* 480 U.S. 938, 107 S.Ct. 1584, 94 L.Ed.2d 774 (1987), we considered a question somewhat related to the issues posed by the *Barker* factor of assertion of the right. There, we had before us the question of whether letters to a trial court constituted an assertion of the right to a speedy trial sufficient to exhaust state remedies in Pennsylvania. We held that the letters, unacknowledged by the state, did not suffice. *Id.* at 54. While *Schandelmeier* dealt with the different issue of exhaustion, we believe, if a defendant is to tip the *Barker* scales significantly in his favor on the factor of assertion of the right, that, at least in cases where the accused is represented by counsel, some formal motion should be made to the trial court or some notice given to the prosecu-

tion. A demand for trial so given does more than meet the exhaustion requirement of § 2254(b); it notifies the state forum that a violation of constitutional proportions may be ongoing, and it gives the state an opportunity to remedy the situation.

Hakeem's next request for a speedy trial came in December of 1984, approximately one month before trial, in the form of a petition for habeas corpus addressed not to the court of New Jersey but to the United States District Court for the District of New Jersey. Where cognizable speedy trial assertions occur shortly before trial, other courts have given minimal weight to such claims. *See United States v. Kalady,* 941 F.2d 1090, 1095 (10th Cir.1991) (one month before trial); *Martin v. Rose,* 744 F.2d 1245, 1252 (6th Cir.1984) (five days before trial). This petition by Hakeem was ultimately denied on exhaustion grounds. Its disposition on that ground does not, however, determine its effect. For that purpose, we will assume that a defendant can make a speedy trial assertion that will weigh in his favor without technically exhausting his state remedies.

Nevertheless, we think the weight to be given Hakeem's December petition in the federal court is reduced by his apparent unreadiness to proceed to trial at any of the times he asserted the right. Where, through contrary actions, a defendant evidences an unwillingness to commence with the trial requested, the request carries minimal weight. *Kalady,* 941 F.2d at 1095 (quoting *United States v. Tranakos,* 911 F.2d 1422, 1429 (10th Cir.1990)); *see also Loud Hawk,* 474 U.S. at 314–15, 106 S.Ct. at 655–56. In a letter dated June 18, 1984, Hakeem informed the Office of the Public Defender that he would not proceed to trial with Arons as counsel; yet it was not until January 7, 1985, a week before trial, that she was replaced as counsel of record. As late as one week before the trial, Hakeem was still interviewing key alibi witnesses. Hakeem was not fully prepared to defend himself until a few days before his trial actually commenced. When

an incarcerated individual demands a trial, he should be prepared for that trial. Evidence to the contrary weighs against a speedy trial violation. *Cf. Barker,* 407 U.S. at 535, 92 S.Ct. at 2194; *Tranakos,* 911 F.2d at 1429.

While a represented defendant's informal correspondence with a state trial judge may constitute a "reasonable assertion" of the right, we do not believe it weighs heavily in favor of a habeas petitioner claiming violation of the right to a speedy trial absent a motion or some evidence of direct instruction to counsel to assert the right at a time when formal assertion would have some chance of success. *See Pemberton,* 813 F.2d at 629. Accordingly, while Hakeem's letters to the trial court coupled with his unrecorded motion may have been sufficient to qualify as an assertion of his right that weighs in his favor under the *Barker* test, we do not think it weighs heavily in his favor. We have to add that our unwillingness to weigh Hakeem's assertions of his right "heavily" in his favor does not doom his speedy trial claim to failure. It merely requires him to make a stronger showing on the other *Barker* factors he advances to support his claim. *See Barker,* 407 U.S. at 523–28, 92 S.Ct. at 2188–91 (rejecting notion that assertion of speedy trial right is necessary condition for finding violation).

We hold, therefore, that Hakeem's assertions of his speedy trial rights in his May correspondence to the trial court, in the October motion that was never filed or served, and in the December habeas petition, although evidence of an assertion of the right, are reduced in weight by their proximity to trial, the ultimate rejection of his ineffectiveness claim and his possible unreadiness for trial at the time he asserted his speedy trial right. Therefore, though we weigh the *Barker* factor of assertion of the right in Hakeem's favor, we disagree with the district court's conclusion that it weighs heavily in his favor.

## D.

Finally, we come to the *Barker* factor of the reason for the delay. *See*

*Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. The reasons behind any prolonged delay in bringing a criminal defendant to trial are significant factors in the analysis of a defendant's constitutional right to a speedy trial. "[D]eliberate attempt[s] to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id.* at 531, 92 S.Ct. at 2192 (footnote omitted). " '[N]eutral reason[s]' such as negligence ... [will] be weighed ... against the government," but less heavily absent "any showing of bad faith or dilatory purpose by the prosecution." *Pemberton,* 813 F.2d at 628 (citation omitted) (considering failure to list the action on the criminal docket as reason for delay). Conversely, however, delays attributable to the dilatory actions of the defendant cut against a finding of a Sixth Amendment violation. *Wells,* 941 F.2d at 258; *United States v. Wangrow,* 924 F.2d 1434, 1436–37 (8th Cir.1991).

Hakeem alleges that the state delayed prosecution in order to bring a co-defendant to trial at the same time or, in the alternative, that the state's negligence led to the extended period of pretrial incarceration. The state directly disputes this assertion and contends Hakeem fostered the delay through pretrial activities. The state appellate court that considered this question found that the delay accrued due to the "need for investigation and trial preparation." In context, we think this finding implies that the state court also determined the delay was attributable to Hakeem. The district court decided that this finding was unsupported by the record and that the delay was attributable to the state's negligence. In so doing, it recognized that in a habeas proceeding the factual findings of state courts are presumptively correct but concluded, without extensive analysis, that the presumption did not apply to Hakeem's case because the state appellate court did not afford him an evidential hearing and the evidence in the state record it had before it was insufficient to support the state court's finding that the delay was not attributable to the state. *See* 28

U.S.C.A. § 2254(d).[11]

In reviewing Hakeem's speedy trial argument, the Appellate Division of the Superior Court of New Jersey found that the delay occurred because of the need for "investigation and trial preparation." *State v. Wooten,* No. A-3657-84T4, slip op. at 11. The state court's appellate division had to make that determination after a review of the cold record because Hakeem had not properly raised the speedy trial issue either at trial on direct appeal or before the trial division in his application for post conviction relief. Nevertheless, the district court concluded "there was *no* valid finding of fact" because no evidentiary hearing had been held on Hakeem's claim. *Hakeem,* 774 F.Supp. at 290 (emphasis in original). It cited *Townsend* and stated that the state appellate division's finding was not entitled to any deference because the merits of the factual dispute were not resolved after a hearing and the state court's determination was not fairly supported by the record. *Id.; see* 28 U.S.C.A. § 2254(d)(1) & (8). When the state then failed to produce any new evi-

dence in the federal habeas proceeding, the district court subjected the record before the state appellate division to plenary review for sufficiency, *Hakeem,* 774 F.Supp. at 291, and determined that the state had failed to meet its burden of establishing the reason for the delay. *Id.* (citing *Barker,* 407 U.S. at 527, 92 S.Ct. at 2190). We think the district court's ultimate conclusion that deference is not required in this case was correct but that it erred in its reasoning concerning the application of § 2254(d) to the state appellate court's finding in this case.

■ Findings on the cause of the delay are entitled to a § 2254(d) presumption of correctness if petitioner had a fair opportunity to present his version of events and the state's findings on the issue are fairly supported by the record. *Cf. Glidewell v. Burden,* 822 F.2d 1027, 1028–29 (11th Cir. 1987) (per curiam) (presumption of correctness attaches to subsidiary findings in speedy trial calculation but not to ultimate conclusion on whether constitutional violation occurred), *cert. denied,* 484 U.S. 1018,

11. Section 2254(d) provides:
    (d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—
    (1) that the merits of the factual dispute were not resolved in the State court hearing;
    (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
    (3) that the material facts were not adequately developed at the State court hearing;
    (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
    (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
    (6) *that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding;* or

    (7) That the applicant was otherwise denied due process of law in the State court proceeding;
    (8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:
    And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.
    28 U.S.C.A. § 2254(d).

108 S.Ct. 727, 98 L.Ed.2d 676 (1988); *Ahmad v. Redman*, 782 F.2d 409, 412–13 (3d Cir.) (determination of historical facts necessary to determine whether constitutional violation occurred subject to presumption of § 2254(d)), *cert. denied*, 479 U.S. 831, 107 S.Ct. 119, 93 L.Ed.2d 66 (1986).

■ We have held that a district court may not apply § 2254(d) unless it is evident that the petitioner received: (1) a hearing on the merits of a factual issue, (2) made by a state court of competent jurisdiction, (3) in a proceeding to which the petitioner and the state were parties and (4) the state court's resolution of the factual dispute is evidenced by a written finding, opinion or other reliable and adequate written indicia. *Reese v. Fulcomer*, 946 F.2d 247, 254 (3d Cir.1991) (citing 28 U.S.C.A. § 2254(d); *Townsend*, 372 U.S. at 313, 83 S.Ct. at 757), *cert. denied*, —— U.S. ——, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992). There is, however, no necessity that the hearing take place at the trial level.

In *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), the United States Supreme Court stated,

Section 2254(d) applies to cases in which a state court of competent jurisdiction has made "a determination after a hearing on the merits of a factual issue." It makes no distinction between the factual determinations of a state trial court and those of a state appellate court. Nor does it specify any procedural requirements that must be satisfied for there to be a "hearing on the merits of a factual issue," other than that the habeas applicant and the State or its agent be parties to the state proceeding and that the state-court determination be evidenced by "a written finding, written opinion or other reliable and adequate written indicia." Section 2254(d) by its terms thus applies to factual determinations made by state courts, whether the court be a trial court or an appellate court. This interest in federalism recognized by Congress in enacting § 2254(d) requires deference by federal courts to factual determinations of all state courts. This is true particularly in a case such as this

where a federal court makes its determination based on the identical record that was considered by the state appellate court and where there was no reason for the state trial court to consider the issue because respondent failed to raise the issue at that level.

*Id.* at 546–47, 101 S.Ct. at 769 (citation omitted).

■ We think *Sumner* directly controls the applicability of § 2254(d) to this case, insofar as its procedural requirements are concerned. Hakeem failed to raise his speedy trial claim in the criminal action before the trial division or before the state court that considered his post-conviction relief motion. The appellate division, therefore, was in the same position as the state appellate court in *Sumner*. It had to make a factual determination from the record before it and that task was thrust on it by Hakeem's failure to take the several opportunities he had to present his claim in a state forum in which a full evidentiary hearing could be had by properly asserting it. As in *Sumner,* both parties were before the state appellate court where they were able to present argument and point to evidence in the record to support their claims. *Sumner* specifically rejects the notion that the § 2254(d) presumption only applies after a trial like evidentiary hearing. It also rejects the argument that a district court owes no deference to a state appellate court that has reviewed the same record that the district court has before it. Hakeem did receive the "hearing" in a state court on the merits of his speedy trial claim that § 2254(d) requires. As in *Sumner*, both the state and the petitioner were present and the state court's finding on the cause of delay was evidenced by a written finding. *See Reese*, 946 F.2d at 254. The district court erred when it held that the absence of an evidential hearing in the appellate court made § 2254(d) inapplicable.

■ Alternately, the district court concluded that the § 2254(d) presumption in favor of state factfinding was inapplicable to the appellate division's finding that the state did not cause the delay because the

record, taken as a whole, does not "fairly support" the state court's finding. *See* 28 U.S.C.A. § 2254(d)(8). We agree with this conclusion.

The Supreme Court has instructed us as follows with respect to § 2254(d) and exception (8). "This deference requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations." *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983). This Court has also stated that § 2254 "reflect[s] a clear congressional policy favoring deference to state findings of fact absent good cause for rejecting such findings." *Nelson v. Fulcomer*, 911 F.2d 928, 932 (3d Cir. 1990). The statute speaks in terms of the state court's finding being "fairly supported" by the record. We have ourselves used that term upon a number of occasions. *See, e.g., Nelson*, 911 F.2d at 932; *Ahmad*, 782 F.2d at 412. Other courts have drawn an analogy to the "clearly erroneous" test we use in reviewing a district court's findings of fact. *See O'Bryan v. Estelle*, 714 F.2d 365, 402 n. 9 (5th Cir.1983) (Buchmeyer, D.J., dissenting), *cert. denied*, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *Wright v. North Carolina*, 483 F.2d 405, 408 (4th Cir.1973), *cert. denied*, 415 U.S. 936, 94 S.Ct. 1452, 39 L.Ed.2d 494 (1974).

Here, in rejecting the findings of the state appellate court, the district court appears to have relied on subsections (1) and (8) without further analysis. *See Hakeem*, 774 F.Supp. at 290–91.

Hakeem himself relies on subsection (8) and contends that the evidence on the record failed to support the state court's conclusion that the delay in bringing Hakeem to trial resulted from "investigation and trial preparation." We agree and hold the record did not fairly support that finding.

The police arrested Hakeem on November 3, 1983. He received appointed counsel on December 28, 1983. Three months later, on March 7, 1984, he entered a plea of not guilty. At that hearing, his appointed counsel failed to appear. The next day, a second public defender, Patricia Arons, advised Hakeem that she had taken over his representation. On April 5, 1984, Hakeem bypassed counsel by writing directly to the trial court about bail and asking for discovery. The trial court acknowledged the letter and forwarded it to Hakeem's counsel at that time, Arons. On May 5, 1984, Hakeem again wrote directly to the trial court complaining about the length of his imprisonment and the delay in receiving discovery. The trial court also forwarded that letter to Arons. She wrote to Hakeem on May 26, 1984 and requested that he contact her to discuss a plea offer. Some time in June, Hakeem prepared a motion for bail reduction independently of Arons, who was still acting as his counsel. The record does not show that anyone ever actually received this motion.

On June 18, 1984, Hakeem wrote to the Office of the Public Defender complaining about Arons. He asserted that she did not have his best interests at heart, that she only sought a plea agreement and that she had failed to file a number of motions he had sent her. He also stated he wanted a change of counsel before trial. On June 25, 1984, the Office of the Public Defender responded in writing. In that letter, the First Assistant Deputy Public Defender advised Hakeem that Arons was capable and suggested that he consider her advice. The defender stated, however, that Hakeem himself had to decide whether to plead or go to trial and, if he should choose the latter, he would be vigorously represented.

On June 29, 1984, Hakeem wrote again to the public defender. He claimed that Arons was not using her best efforts to serve him and that he was "firing" her. On June 30, Arons wrote to Hakeem informing him that his trial had not been scheduled because the state wished to try him after his co-defendant who had given a statement to the police. On July 5, Hakeem wrote to Arons complaining that his trial should not have to wait for the other defendants and that he was quite displeased with her representation. On July 11, the public defender wrote to Hakeem informing him that the case would not be reassigned to another attorney and that he

could not represent himself without court approval.

On July 14, Ms. Arons filed a severance motion. The court denied it on July 27. Arons informed Hakeem of the result by letter dated July 28. On August 25, Arons forwarded Hakeem copies of the indictments and advised him that he now had a record of all the discovery that had taken place up to that time. On October 16, 1984, Hakeem prepared a "motion for a speedy trial." It sought dismissal of the charges against him under the New Jersey Speedy Trial Act and the Sixth Amendment. Neither the prosecutor's office nor the court clerk of the state court have a record showing receipt of that motion.

On December 11, 1984, Hakeem filed a habeas petition with the United States District Court for the District of New Jersey alleging ineffective assistance of counsel, denial of a speedy trial, and cruel and unusual punishment. The district court subsequently denied the petition for failure to exhaust remedies.

On January 7, 1985, just nine days before trial, Hakeem changed counsel for the third time. His new attorney indicated that he had spoken with Hakeem six times in prison and was investigating potential alibi witnesses that Hakeem's earlier lawyers had failed to interview.

■■■ This evidence is insufficient to fairly support any determination by the state court that the delay was attributable to Hakeem's "need for investigation and trial preparation." The record shows there were significant amounts of time during which the state cannot point to any activity on Hakeem's part that contributed to the delay. For example, the record shows that between December 28, 1983 and March 7, 1984, and between August 25, 1984 and January 7, 1985, Hakeem had no motions before the trial court nor was he engaged in significant pretrial activity. We note that once a delay is alleged and rises to the point where a *Barker* inquiry has commenced, the state, not the prisoner, bears the burden to justify the delay. *See Barker,* 407 U.S. at 527, 92 S.Ct. at 2190. Although there is evidence that Hakeem was

*in part* responsible for the delay, no fair construction of the state record permits a finding that he was solely at fault. While § 2254(d) would otherwise apply to this case under *Sumner,* we hold that any state court determination that could be implied to attribute the delay to Hakeem is not fairly supported by the record and therefore is not entitled to deference because of the exception set forth at § 2254(d)(8). *Accord Smith v. Freeman,* 892 F.2d 331, 339 n. 14 (3rd Cir.1993). Accordingly, we give the state court finding no presumption of correctness. *See* 28 U.S.C.A. § 2254(d)(8).

■■■ We are left with the district court determination, made without an evidentiary hearing, that the state negligently caused the delay. Where a petitioner has not received a "full and fair hearing" in the state court, an evidentiary hearing in the federal habeas court is appropriate. *Townsend,* 372 U.S. at 313, 83 S.Ct. at 757. *Townsend* enumerates six instances where the petitioner is deemed not to have had a "full and fair hearing" before the state tribunal. *See id.* (full and fair hearing denied at state level, where: (1) the merits of the factual dispute were not resolved, (2) the factual determination is not fairly supported by the record as a whole; (3) the fact finding procedure was inadequate; (4) new evidence is alleged; (5) there was an inadequate development of material facts; or (6) other reasons would call into question whether the petitioner received a "full and fair fact hearing"). These reasons generally relate to the accuracy and propriety of the state court proceeding and *Townsend* presumes that where the state procedure was faulty, a federal court could not reasonably rely on those facts to derive a conclusion about potential constitutional violations. It is not only where procedural inadequacies exist in the state record that a federal habeas petitioner should be afforded an opportunity to present evidence on his constitutional claim to the district court. *Townsend* also concludes that a habeas petitioner has been denied a full and fair hearing where the facts do not "fairly support" the state court conclusion. This is unlike the other *Townsend* reasons for

granting a federal hearing. It does not rest analytically on the inadequacy of the state proceeding, but on the sufficiency of the evidence, a concept akin to federal appellate review for clear error. *Cf. Wright,* 483 F.2d at 408.

In this context, we think that *Townsend* mandates an evidentiary hearing, unlike § 2254(d)(8) which only eliminates a presumption in favor of the state court's findings of fact. Moreover, the federal habeas rules indicate a hearing should be given whenever there are factual disputes. *See* Habeas Rule 8(a) advisory committee's note. The district court erred in not affording Hakeem a hearing after determining that the record did not fairly support the factual conclusion drawn by the New Jersey Appellate Division that Hakeem caused the delay. In addition, if it is the state's fault, the degree and extent of its culpability is in dispute. *Townsend* is quite explicit,

> Where the facts are in dispute, the federal court in habeas corpus [proceedings] must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding.

*Townsend,* 372 U.S. at 312, 83 S.Ct. at 757; *see also Smith,* 892 F.2d at 338. As we have demonstrated above, Hakeem did not receive a full and fair hearing at the state court level because the record did not "fairly support" the state appellate court finding on the cause of the delay. Accordingly, we must remand this case to the district court to hold an evidentiary hearing on the reasons for the delay. After that hearing, the district court can resolve the disputed fact as to the reason for the delay, factor it into the *Barker* equation and do the balancing that *Barker* requires.

Because the balancing is itself a legal issue subject to plenary review, we think it is appropriate to comment on that issue for the benefit of the district court, which must do that balancing in the first instance. We believe that if, after the hearing, the district court were to find as it did before, that the delay was occasioned by the negligence of the state, the factor of delay would weigh somewhat in Hakeem's favor. *See Barker,* 407 U.S. at 531, 92 S.Ct. at 2192; *Pemberton,* 813 F.2d at 628. Given our foregoing discussion of the other *Barker* factors in this case, however, we do not believe negligence on the part of the state that merely contributed to the delay would necessarily bring the balance down so heavily in Hakeem's favor that it would establish a Sixth Amendment violation. Were the district court to find, based on adequate supporting evidence, that the delay resulted from a "deliberate attempt [by the government] to delay the trial in order to hamper the defense," or perhaps from gross negligence or reckless disregard of Hakeem's constitutional rights, such motivation would weigh heavily in favor of a violation and could tip the scales in favor of granting the writ. *See Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. This balancing, however, is for the district court to do in the first instance and, indeed, our remand includes that in its purposes.[12]

To the extent the *Barker* factors can possibly be balanced on the current record, we believe they weigh as follows. The fourteen and one-half month delay between arrest and trial triggers a *Barker* inquiry. Hakeem suffered no demonstrable prejudice from the delay and any inference of presumed prejudice that flows from a delay of this length is insufficient to place the prejudice factor on Hakeem's side of the scales on the facts of this case. Hakeem failed to make a completely clear assertion of his speedy trial right until shortly before trial. Nevertheless, he did assert that right and the factor of assertion weighs somewhat in his favor. Finally, because the state appellate court's finding attributing the delay to Hakeem's actions was not "fairly supported" by the record and as such, is not presumed to be correct under § 2254(d), and the cause of the delay is in

---

**12.** Of course if the district court concluded after the hearing that the delay was attributable to the dilatory actions of the defendant, this factor would weigh against Hakeem and could doom his Sixth Amendment claim.

dispute, we are unable to place that factor in the balance. We will therefore remand for an evidentiary hearing on the issue of who caused the delay.

V.

We will vacate the district court's order granting habeas relief and remand the case to it with instructions to hold an evidentiary hearing to determine the cause of the delay in bringing Hakeem to trial and thereafter for further proceedings in accord with this opinion.