**Donald K. WARD, Petitioner,**

v.

**Robert SNYDER, Warden, Delaware Correctional Center, Charles M. Oberly, III, Attorney of the State of Delaware and Robert O'Neill, Deputy Attorney General, Respondents.**

Civ. A. No. 92–196–LON.

United States District Court,
D. Delaware.

Nov. 30, 1993.

Donald K. Ward, pro se.

Loren C. Meyers, Deputy Atty. Gen., Dept. of Justice, Wilmington, DE, for respondents Snyder and Oberly.

James J. Hanley, Deputy Atty. Gen., Dept. of Justice, Wilmington, DE, for respondent O'Neill.

## OPINION

LONGOBARDI, Chief Judge.

### I. FACTS and PROCEEDINGS

Petitioner filed this combined prisoner action under 42 U.S.C. § 1983 and petition for writ of habeas corpus under 28 U.S.C. § 2254 on March 31, 1992 [Docket Item ("D.I.) 2, 3]. By Orders of November 18, 1992, the Court separated these two actions (D.I. 5, 6). On August 17, 1993, the Magistrate issued a Report and Recommendation addressing the issue of whether Petitioner has exhausted his state remedies for purposes of his habeas claim (D.I. 39).

This Court adopts the statement of the facts as set out in the Magistrate's Report (D.I. 39, at 2–3) and substantially reprinted here. On May 27, 1989, Petitioner was arrested and charged with Attempted Unlawful Sexual Intercourse Third Degree, Unlawful Sexual Intercourse Third Degree, and Unlawful Sexual Intercourse Second Degree. He was incarcerated, and bail was set at $45,000 secured. On August 9, 1989, Petitioner was indicted, and on August 16, he was arraigned. Trial was then scheduled for October 16, 1989. On September 28, 1989, the Deputy Attorney General assigned to the case, Robert O'Neill, requested a continuance stating that he would be at a seminar on the scheduled trial date, and that the F.B.I.'s analysis of the physical evidence was not yet complete. The case was rescheduled for October 30, 1989. On October 30, 1989, the State requested another continuance until January 2, 1990.

On or around December 11, 1989, O'Neill became aware that the evidence had not yet been sent to the F.B.I. The defendant filed a motion to compel discovery; the motion

was granted on December 18, 1989. It was not until December 19, 1989 that the evidence was sent to the F.B.I. for analysis. On December 21, 1989, the State requested another continuance, which was granted, and O'Neill was ordered to provide a new, mandatory trial date. Eventually, April 2, 1990 was selected as the mandatory date.

On January 29, 1990, defense counsel was informed that the evidence had not been taken to the F.B.I. until December 19, 1989. On February 1, 1990, defendant filed a motion to dismiss for denial of a speedy trial under Superior Court Rule 48(b). On February 12, 1990, the motion was denied; however, defendant's bail was reduced to $15,000 unsecured.

At the State's request, the April 2, 1990 trial date was postponed to April 9, 1990. Then, at the defense's request, trial was rescheduled and began on August 9, 1990. The jury returned a verdict of guilty on all three counts.

Petitioner filed an appeal in the state supreme court, claiming that the trial court's refusal to dismiss the charges against him pursuant to Rule 48(b)'s speedy trial provision constituted an abuse of discretion. (See D.I. 30, Appellant's Opening Brief, at 2). In his appeal, Petitioner did not raise a Sixth Amendment claim. The state supreme court, however, in considering Petitioner's speedy trial claim under Rule 48(b), applied federal Sixth Amendment analysis, and concluded that the State's conduct did not rise to a constitutional level. *Ward v. State*, No. 373, 1990, at ¶ 10, 1991 WL 247756 (Del.1991). The supreme court affirmed the convictions. *See id.*

In his petition for federal habeas corpus relief, Petitioner asserts that he was entitled to a dismissal of the criminal charges against him pursuant to the speedy trial provision of Rule 48(b) (D.I. 2, at 6). He also asserts that the State, through its Deputy Attorney General, violated his federal constitutional rights as applied to the states through the Due Process Clause of the Fourteenth Amendment (D.I. 2, at A–6).

Respondents contend that Petitioner has not presented a federal issue for review because, in his petition for federal habeas relief, he claims only that Rule 48(b) required dismissal of the charges against him; he does not refer to the Speedy Trial Clause of the Sixth Amendment (D.I. 16, ¶ 10). Alternatively, Respondents contend that, even if Petitioner has presented a federal issue for review, he has not exhausted his state remedies because he did not raise a Sixth Amendment claim in the state courts (D.I. 16, ¶ 10).

In the Report and Recommendation of August 17, 1993, the Magistrate concluded that Petitioner has presented a federal issue for review by his statement that his "Federal Constitutional Rights as applied to the State through the Due Process Clause of the Fourteenth Amendment" were violated (D.I. 39, at 4–5). The Magistrate also concluded that the state supreme court, in considering Petitioner's Rule 48(b) claim, had addressed the substantial equivalent of Petitioner's Sixth Amendment speedy trial claim and, therefore, Petitioner has satisfied the exhaustion requirement of § 2254 (D.I. 39, at 4–5). Accordingly, the Magistrate ordered Respondents to file an Amended Answer addressing the merits of Petitioner's habeas claim (D.I. 39, at 5). In addition, the Magistrate recommended that Attorney General Oberly and Deputy Attorney General O'Neill be dismissed as defendants in this habeas action because they have no custodial relationship to Petitioner (D.I. 39, at 5–6).

On September 17, 1993, Respondents filed their Supplement to Answer (D.I. 40), and on October 12, 1993, Petitioner filed his response to the Respondents' Supplement (D.I. 41).

After careful and de novo review of the record in this action and the Magistrate's Report and Recommendation (D.I. 39), the Court concurs with the Magistrate's reasoning and conclusion that Petitioner has exhausted his state remedies. The Court will, therefore, proceed to the merits of Petitioner's habeas corpus claim.

## II. *ANALYSIS*

Title 28 U.S.C. § 2254(a) provides in relevant part:

[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). The essence of Petitioner's habeas corpus claim is that he is in custody in violation of the Sixth Amendment to the United States Constitution, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a *speedy* and public trial...." U.S. Const. Amend. VI. (emphasis added).

The starting point for analyzing Petitioner's habeas claim is the United States Supreme Court's decision in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), where the Court established a four-factor balancing test for assessing claims of speedy trial violations. *Id.* at 530, 92 S.Ct. at 2192. The four factors to be considered are: 1) length of the delay; 2) reason for the delay; 3) whether and when the defendant asserted his right; and 4) whether the defendant was prejudiced by the delay. *Id.; see also Hakeem v. Beyer,* 990 F.2d 750, 759 (3d Cir.1993).

## A. Length of Delay

The length of the delay is a "triggering mechanism" because "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. A determination of when a delay rises to the level of "presumptively prejudicial" depends on the facts of a particular case. *United States v. $8,850,* 461 U.S. 555, 565, 103 S.Ct. 2005, 2012, 76 L.Ed.2d 143 (1983).

In this case, Petitioner was arrested on May 28, 1989, and his trial began on August 6, 1990. Thus, the length of delay was almost fourteen months. Although a " 'delay of 14 months is ... not dispositive in and of itself, [it] is sufficiently lengthy to warrant an inquiry into the other facts.' " *Hakeem,* 990 F.2d at 760 (quoting *United States ex rel. Stukes v. Shovlin,* 464 F.2d 1211, 1214 (3d Cir.1972)). The Court must, therefore, ex-

amine Petitioner's claim under the remaining *Barker* factors.

## B. Reason for Delay

The second factor to consider in evaluating a speedy trial claim is the reason for the delay. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. The weight assigned to a given reason depends upon the nature of the reason. *Id.* at 531, 92 S.Ct. at 2192. For example, "deliberate attempt[s] to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id.* In contrast, "more neutral reason[s] such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered...." *Id.*

In this case, Petitioner was arrested on May 28, 1989, and indicted on August 9, 1989. Trial was originally scheduled for October 16, 1989. On September 28, 1989, the State requested that the trial be rescheduled because: 1) Deputy Attorney General O'Neill would be out of town attending a seminar on October 16; and 2) the F.B.I.'s analysis of the evidence was not complete. The State's request was granted, and the trial was rescheduled for October 30, 1989. Subsequently, at the State's request, the October 30 trial date was rescheduled to January 2, 1990, and then to April 2, 1990, and then to April 9, 1990. In early April 1990, the trial was again delayed to allow the defense sufficient time to review the F.B.I. data, which the prosecution had just received. Trial was rescheduled for and held on August 6 through August 9, 1990.

Petitioner contends that the State manipulated the judicial process at his expense, and that the unnecessary delay was a direct result of the State's actions. (D.I. 2, at A–6). In support of his contention, he asserts, *inter alia,* that Assistant Deputy Attorney General O'Neill positively knew on December 18, 1989 that none of the evidence had been taken to the F.B.I. for analysis as of December 11, 1989 (D.I. 2, Statement of Facts, at 4–5). Yet, at an office conference on December 18, at which the State was specifically ordered to produce a list of evidence forwarded to the F.B.I., O'Neill did not disclose to the Court or to counsel that the evidence had not been

timely submitted (D.I. 2, Statement of Facts, at 4). In fact, the evidence was not taken to the F.B.I. until the day after the office conference, on December 19, 1989 (D.I. 2, Statement of Facts, at 5). The defense was not informed of the December 19th submission date until January 29, 1990 (D.I. 2, Statement of Facts, at 7).

Petitioner asserts that if his conviction is allowed to stand, "it leaves standing the impression that the State is free to engage in gross negligence, deliberate misrepresentation and manipulation of the criminal justice system, of acts done intentionally and maliciously" in violation of Petitioner's constitutional rights (D.I. 2, at A–6).

The State concedes that the five-month trial delay between October 30, 1989 and April 2, 1990 was "directly attributable to the prosecution's failure to ensure that the evidence had been promptly delivered to the F.B.I. for testing." (D.I. 40, ¶ 13). The State asserts, however, that the four months between April 9 and August 6 were "directly attributable to the defense request to conduct its own analysis of the evidence, a period of time that would have been required regardless of when the police had delivered the physical evidence to the F.B.I." (D.I. 40, ¶ 13).

The State also asserts that there is no evidence that Deputy Attorney General O'Neill intentionally manipulated the judicial process (D.I. 40, ¶ 14). Rather, the State contends that between September and December 1989, "the prosecutor repeatedly attempted to determine the status of the evidence testing"; when the prosecutor discovered in early December 1989 that the evidence had not yet been submitted to the F.B.I., he directed that it be done immediately (D.I. 40, ¶ 14). According to the State, "there is no evidence that the prosecution deliberately attempted to delay the trial in order to hamper the defense." (D.I. 40, ¶ 14).

Applying the *Barker* analysis to the facts presented here, the Court is of the opinion that the prosecutor's actions did not constitute "deliberate attempts to delay the trial in order to hamper the defense." *See Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. Although the five-month delay between October and April is directly attributable to the State's failure to ensure that the evidence was submitted to the F.B.I.,[1] nothing in the record suggests that this failure was due to the State's *deliberate* attempts to hamper the defense. It is certainly true, as the state supreme court stated, that "[p]rofessional candor required the State to disclose the delay in forwarding the evidence to the F.B.I. to both the court and defense counsel as soon as it was known." *Ward v. State, supra,* at ¶ 9. The Court finds, however, that although the prosecutor did not timely disclose this information as he unquestionably should have, the record in this case does not support a conclusion that the prosecutor's conduct was intended to hamper the defense. As such, the Court finds that the second *Barker* factor weighs against the State, but not heavily so. *See Government of Virgin Islands v. Pemberton,* 813 F.2d 626, 628 (3d Cir.1987) (absent showing of bad faith or dilatory motive by prosecution, reason for delay cannot weigh heavily against the government).

## C. Assertion of the Right

The third factor for the Court to consider in assessing a speedy trial claim is whether and when Petitioner asserted his right. *See Barker,* 407 U.S. at 530–31, 92 S.Ct. at 2192. Here, Petitioner first asserted his right as early as February 1990, when he filed a motion to dismiss for lack of speedy trial based on Superior Court Rule 48(b). His motion was denied. A motion for reargument was also denied in late March 1990. Then, in April 1990, Petitioner requested a continuance so that he and his counsel could

---

**1.** With regard to the subsequent delay from April to August, 1990, Respondents contend, and Petitioner does not dispute, that this additional four-month pretrial delay was a result of the defense's request for time to analyze the F.B.I. data. The Court notes that "[w]hen the reason for the delay originates with the defendant or his counsel, such delay will not be considered for purposes of determining whether the defendant's right to a speedy trial has been infringed." *Wells v. Petsock,* 941 F.2d 253, 258 (3d Cir.1991) (citation omitted), *cert. denied,* — U.S. —, 112 S.Ct. 3038, 120 L.Ed.2d 906 (1992).

have time to review the F.B.I. data, which they had just received. The continuance was granted, and trial was rescheduled and held in August 1990. After the trial, in July 1991, Petitioner appealed the denial of his Rule 48(b) motion to the Delaware Supreme Court. The supreme court denied his motion, and Petitioner filed this petition for habeas corpus relief on March 31, 1992.

The Court finds that Petitioner timely and appropriately asserted his speedy trial right by virtue of his Rule 48(b) motion in February 1990 and his subsequent appeals. Respondents urge the Court to balance against Petitioner's timely assertion of his right the fact that he requested a continuance in April 1990, which resulted in an additional four-month delay (D.I. 40, at ¶ 15). *See Hakeem,* 990 F.2d at 764 ("Repeated assertions of the right do not, however, balance this factor in favor of a petitioner when other actions indicate that he is unwilling or unready to go to trial."). In balancing these two factors, the Court is not persuaded that Petitioner's timely assertion of his right is outweighed by his request for a continuance because the record does not indicate that Petitioner was either unready or unwilling to go to trial when he asserted his speedy trial right in February 1990. *See id.* at 766 (petitioner's assertion of speedy trial right reduced in weight by, among other things, his possible unreadiness for trial at the time he asserted his speedy trial right). Rather, his request for a continuance was made only after the State produced the F.B.I. evidence to the defense in April 1990. Nevertheless, Petitioner's Sixth Amendment speedy trial claim is based upon the entire fourteen-month delay between his arrest and trial and, therefore, the Court must factor Petitioner's request for a continuance into the balance. The Court finds that the third *Barker* consideration weighs in Petitioner's favor, but not as heavily as it would in the absence of the request for the continuance.

### D. Prejudice

The final and most critical factor to be balanced in evaluating a speedy trial claim is whether and how the defendant was prejudiced by the pretrial delay. *See Barker,* 407

U.S. at 532, 92 S.Ct. at 2193; *see also Hakeem,* 990 F.2d at 760 (prejudice is the most important *Barker* factor); *Wells,* 941 F.2d at 258 (same). Three types of prejudice can result from pretrial delay: 1) oppressive pretrial incarceration; 2) anxiety and concern; and 3) impairment of the defense. *Id.; Hakeem,* 990 F.2d at 760. Of the three, the most serious is the impairment of the defense. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. With respect to all three types, "the burden of showing prejudice lies with the individual claiming the violation and '[the] possibility of prejudice is not sufficient to support [the] position that ... speedy trial rights [are being] violated.'" *Hakeem,* 990 F.2d at 760 (quoting *United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986)).

Petitioner was arrested on May 27, 1989; he was released on unsecured bail on March 12, 1990. Thus, Petitioner was incarcerated for nine and one-half months before being released on bail. He was reimprisoned on June 27, 1990 for violating the conditions of bail (D.I. 40, ¶ 16).

Petitioner contends that he suffered numerous prejudicial effects as a result of his lengthy pretrial incarceration (D.I. 41, at 11–12). For example, he asserts that his fiancee eventually broke their engagement, his automobile was sold at a loss to him to pay bills, his family refused to communicate with him, he lost weight and suffered depression, and he was not eligible to participate in any programs or to receive medical attention for a severe toothache because of his pretrial status. Notably, Petitioner has presented no evidence that his defense was impaired in any way by the pretrial delay.

In their answer, Respondents contend that Petitioner's fiancee ended the engagement, not merely because of Petitioner's pretrial incarceration, but because the two of them expected him to be in jail for a long time (D.I. 40, at ¶ 17). With regard to the sale of Petitioner's car, Respondents assert that the car was sold just one month after his arrest, not after several months had passed with him in jail (D.I. 40, at ¶ 17). Further, according to Respondents, there is no evidence that Petitioner's fiancee suffered any financial

hardship as a result of Petitioner's incarceration, nor is there any evidence that Petitioner had any dependents (D.I. 40, at 17). Respondents also contend that the reluctance of Petitioner's family to communicate with him is attributable, not to his pretrial incarceration, but to the nature of the crime and the fact that the victim was his niece (D.I. 40, at ¶ 17).

Respondents further assert that Petitioner's ineligibility for prison programs because of his pretrial status did not render his incarceration oppressive.[2] With regard to his dental problem, Respondents assert that "there is no indication that his situation was anything but an isolated disagreement about the necessary course or treatment; a dispute over treatment does not constitute an Eighth Amendment violation." (D.I. 40, ¶ 16). Finally, Respondents assert that the stress of imprisonment was not unfamiliar to Petitioner as he had just been released from prison in December of 1988 after serving ten years of a fifteen year sentence; he had only been out of jail five months before his arrest in May 1989 (D.I. 40, ¶ 18).

In considering whether Petitioner's pretrial incarceration of nine and one-half months was oppressive, the Court notes that the Third Circuit has declined to find that "pretrial incarceration of either thirteen or fourteen and one-half months demonstrates *per se* oppressive pretrial delay." *Hakeem,* 990 F.2d at 761. Rather, according to *Hakeem,* Petitioner must present "proof of substandard conditions or other oppressive factors beyond those that necessarily attend imprisonment." *Id.; see also Wells,* 941 F.2d at 258 (pretrial incarceration of seven months was not oppressive in the absence of evidence that conditions of confinement were extraordinary or substandard). In this case, Petitioner has failed to present such proof. The Court finds it difficult to believe, as did the state supreme court, that Petitioner's claims of a broken engagement and the failure of his family to communicate with him were attributable to the pretrial delay and not to the nature of his crime. *See Ward v. State,*

*supra,* at ¶ 8. In addition, Petitioner has not shown that his need to sell his car to pay his bills arose as a direct result of the nine and one-half month pretrial incarceration, as he sold the car only one month after he was imprisoned (D.I. 22, at A113). *See Hakeem,* 990 F.2d at 763 (causal connection must exist between pretrial delay and alleged prejudice).

Furthermore, Petitioner eventually received credit towards his sentence for the 289 days he spent in jail (D.I. 40, at ¶ 16). Credit for time served can " 'mitigate the potential oppressive effects of ... incarceration.' " *Hakeem,* 990 F.2d at 762 (quoting *Gray v. King,* 724 F.2d 1199, 1204 (5th Cir.), *cert. denied,* 469 U.S. 980, 105 S.Ct. 381, 83 L.Ed.2d 316 (1984)). The *Hakeem* court stated that "[c]redit for time served cannot cure every unexcused delay but where the defendant has not pointed to any evidence of additional, specific prejudice flowing from the delay, we are unwilling to infer prejudice based on incarceration that the defendant would ultimately have had to serve solely because fourteen and one-half months had elapsed between arrest and trial." *Id.* Similarly, in this case, the Court is unwilling to infer prejudice based merely upon the nine and one-half months that Petitioner was incarcerated prior to his trial without evidence of specific prejudice flowing from the delay. Petitioner has failed to demonstrate any such specific prejudice flowing directly from the delay and, therefore, he has failed to demonstrate that his pretrial incarceration rises to the level of "oppressive."

With regard to the second type of prejudice, anxiety, "[v]ague allegations of anxiety are insufficient to state a cognizable claim." *Id.* Rather, a petitioner must produce evidence demonstrating that his anxiety exceeded that which is " 'inevitable in a criminal case' "; he must produce evidence of "psychic injury." *Id.* (quoting *United States v. Dreyer,* 533 F.2d 112, 115–16 (3d Cir.1976)). In this case, Petitioner has failed to show such injury. His vague claims of anxiety, weight

---

**2.** In support of this assertion, Respondents cite *Saunders v. Watson,* Civ.Act. No. 88–519–JRR, Rept. & Rec. at 6–8 (D.Del. June 6, 1990) (no cause of action exists under the Eighth Amend-

ment where prisoner is administratively classified to a status given fewer privileges than those given to the general prison population).

loss, and depression do not constitute prejudice to the extent necessary to prevail on a Sixth Amendment claim. *See id.* In other words, Petitioner has not demonstrated that his anxiety exceeded that which inevitably attends imprisonment. Moreover, the Court observes that, although Petitioner may have suffered some anxiety while imprisoned, he was no stranger to prison life, having just been released from prison five months prior to his May 1989 arrest after serving ten years of a fifteen year sentence.

The third type of prejudice, impairment to the defense, is the most serious of the three types. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. For example, if witnesses die, disappear, or lose their memory, the prejudice to the defendant is obvious. *Id.* In this case, Petitioner has not alleged that his defense was impaired *in any way* by the pretrial delay.

Thus, with respect to the prejudice prong of the *Barker* test, the Court finds that Petitioner has failed to show that he suffered any serious prejudice as a result of the pretrial delay. Furthermore, the Court is unwilling to infer prejudice from the length of the delay in and of itself. *But see Doggett v. United States,* — U.S. —, — – —, 112 S.Ct. 2686, 2693–94, 120 L.Ed.2d 520 (1992) (inference of prejudice may be drawn from eight and one-half year delay in bringing case to trial). Unlike *Doggett,* the length of pretrial delay in this case is insufficient to warrant an inference of prejudice. *See Hakeem,* 990 F.2d at 764 ("We do not believe a fourteen and one-half month delay is in the same category as the eight and one-half year delay held prejudicial in *Doggett.*").

The Court's balancing of the *Barker* factors leads to the following results. The fourteen month delay between Petitioner's arrest and trial necessitates a *Barker* inquiry. *See Hakeem,* 990 F.2d at 771 ("fourteen and one-half month delay between arrest and trial triggers a *Barker* inquiry."). On Petitioner's side of the balance, the reason for the pretrial delay weighs somewhat in his favor, and the timely assertion of his right weighs more heavily in his favor. On the other side of the balance are the facts that the State did not deliberately seek delays in order to hamper the defense and, most significantly, that Petitioner suffered minimal, if any, prejudice as a result of the pretrial delay. The Court finds that this lack of prejudice to Petitioner strongly counterbalances the factors that weigh in Petitioner's favor. Given the facts that prejudice is the most critical factor in the speedy trial analysis, and that evidence of prejudice is essentially absent from the record before the Court, the balance in this case favors the State. *See Government of Virgin Islands v. Burmingham,* 788 F.2d 933, 936 (3d Cir.1986) (absence of prejudice was decisive factor in finding no speedy trial violation); *accord Perez v. Sullivan,* 793 F.2d 249, 256 (10th Cir.) (absent prejudice, court is reluctant to find speedy trial violation), *cert. denied,* 479 U.S. 936, 107 S.Ct. 413, 93 L.Ed.2d 364 (1986).

## CONCLUSION

After carefully considering the entire record, the Court finds that Petitioner has not suffered a violation of his Sixth Amendment right to a speedy trial. The Court does not condone the prosecutor's conduct in failing to ensure that the evidence was submitted to the F.B.I. and in failing to disclose to the Court and counsel, as soon as it was known, that the evidence had not been submitted to the F.B.I. until December 1989; however, the Court's analysis of Petitioner's claim in light of the *Barker* factors compels the conclusion that the pretrial delay in this case was not of constitutional magnitude. Petitioner's Petition for a Writ of Habeas Corpus (D.I. 2) is hereby denied.